UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **BOBBY'S COUNTRY COOKIN', LLC**<br><br>   **Plaintiff,**<br><br>   v.<br><br>**WAITR HOLDINGS, INC.**<br><br><br>   **Defendant.** | Case No.: _____<br><br>**CLASS ACTION** |

**CLASS ACTION COMPLAINT**

Plaintiff Bobby's Country Cookin', LLC, individually and on behalf of all persons or entities nationwide who are similarly situated, upon personal knowledge as to facts pertaining to it individually and upon information and belief as to all other matters, based on the investigation of its counsel, against the Defendant Waitr Holdings, Inc., states as follows:

**I.   NATURE OF THE CASE**

1.  Plaintiff brings this action to challenge Waitr's breach of the form agreements it enters with its restaurant customers (referred to by Waitr and sometimes herein as "restaurant partners") by charging more for its services than agreed. Waitr made a deal with Plaintiff and thousands of other restaurants: it would include them in its online ordering platform in exchange for a Service Transaction Fee of 10% of the order amounts placed on that platform. Waitr broke that agreement by unilaterally, unlawfully imposing a Service Transaction Fee of 15% of the order amounts.

2.  Plaintiff Bobby's Country Cookin', LLC is a small business that owns and operates a restaurant in Little Rock, Arkansas. Waitr is a large, publicly traded company which allows

1

more than a million users to order food from thousands of restaurants across the United States in exchange for a delivery fee and driver tip that it charges users on each order.

3.      In order for restaurants to be part of the Waitr network, and appear on the Waitr platform, Waitr requires them to enter into a form contract.    Notably, this agreement is a pre-printed, contract of adhesion that is uniform among putative class members in all relevant aspects. The term of this agreement is one year, and it auto-renews for consecutive one-year terms unless either party provides written notice of cancellation at least 30 days before the end of the term.  In addition to an initial Network Fee, the form contract allows Waitr to charge restaurants a specified percentage of each order placed on the Waitr platform, called a Service Transaction Fee.  Under the express contractual terms, the Service Transaction Fee is a non-variable 10%.  Like thousands of other small businesses across the country, Plaintiff entered into this standard, preprinted contract with Waitr.

4.      In 2018, Waitr unilaterally raised the Service Transaction Fee it charges customers, including Plaintiff, to 15% of the order amounts.  It did so intentionally; blatantly ignoring the contractual mandate that no changes to the contract could be made except in writing with signatures of all parties.  That Waitr imposed this unlawful price increase after announcing its acquisition by an investment fund, but shortly before its initial public offering, suggests an intent to maximize potential revenue with disregard for its contractual obligations to its customers.

5.      Waitr's conduct is a breach of contract and a violation of the duty of good faith and fair dealing that underpins those contracts under Louisiana law, which governs all claims in this litigation.

6.      Further, this case presents a prototypical situation for class treatment. Waitr's conduct is uniform among all customers.  Plaintiff and all class members entered into the exact

same form agreement with Waitr. The agreement with Plaintiff and all class members mandates that uniform Louisiana law applies to all class members' claims. The application of shared law to a common course of conduct will determine liability for the class as a whole, ensuring that the rights of thousands of small businesses are vindicated through the efficiency of a single trial.

## II.  JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $5,000,000, the proposed classes consists of more than 100 members, and minimal diversity exists.[1]

8. This Court has personal jurisdiction over Waitr because Waitr has its registered corporate headquarters in Lake Charles, Louisiana, is authorized to do business and in fact does business in this District, the specific conduct at issue in this case originated in and emanated from this District, and Waitr could reasonably anticipate litigation in this district under traditional notions of fair play and substantial justice. Further, the form, preprinted agreement between at issue contemplates jurisdiction in this Court.

9. Venue is proper in this Court under 28 U.S.C. § 1391. A substantial portion of the conduct giving rise to Plaintiff's claims and to the claims of putative class members occurred in this District. The form contract at issue provides for venue for all claims in this District.

## III.  PARTIES

10. Plaintiff Bobby's Country Cookin', LLC is an Arkansas corporation with its principal place of business in Little Rock, Arkansas.

11. Plaintiff's experience with Waitr is typical of the class in all relevant aspects.

---

[1] Waitr has more than 8,000 "restaurant partners," the majority of which entered into the standard contract at issue, in over 20 states. Waitr, as a resident of Louisiana, is diverse from Plaintiff, a resident of Arkansas, as well as from unnamed class members.

Plaintiff entered into the form contract at issue with Waitr in July of 2017. Like all contracts at issue in this case, Plaintiff's Waitr contract provided that Waitr would include Plaintiff in its online delivery platform in exchange for a fee and that Waitr would receive 10% of the order amounts made through that platform in exchange for online ordering services. It contained a year long term that would auto-renew for successive year long terms unless a party opted-out at least 30 days before renewal. The contract also provided that it would be governed under the laws of Louisiana and that it could not be altered in any way except through writing signed by both parties. In 2018, just into the second year-long contractual term for Plaintiff, Waitr unilaterally imposed a price increase on what it charged, raising the Service Transaction Fee from 10% to 15% of all order amounts. It did so for thousands of similarly situated small businesses at the same time.

12. Defendant Waitr Holdings, Inc. is a Delaware entity with its principal place of business in Lake Charles, Louisiana. It is the successor entity through merger to Waitr, Inc., operates the Waitr platform, and entered into the form contacts at issue.

### IV.   CLASS ACTION ALLEGATIONS

13. Plaintiff brings this action pursuant to Rule 23(a) and (b)(3), and proposes the following class:

> All persons or entities who reside in the United States who, at any time from May 1, 2009 through the date of class certification, entered into a written contract with Waitr Holdings, Inc. or Waitr, Inc, and whose Service Transaction Fee was increased.

14. Excluded from the proposed class are members of the judiciary, entities currently in bankruptcy, entities whose obligations have been discharged in bankruptcy, and governmental entities. Also excluded from the proposed class are Waitr's employees, subsidiaries, and affiliates. Further excluded from the class are restaurant customers whose Service Transaction Fee was

increased via a writing signed by both of the parties.

15. Plaintiff maintains the right to create additional subclasses or classes, if necessary, and to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

### A. Existence And Predominance Of Common Questions Of Law And Fact.

16. Waitr engaged in a common course of conduct which gives rise to common questions of law and fact which predominate in this litigation. This common course of conduct—imposing unlawful rate increases not allowed by contract—effected class members in the exact same manner. The amount of damages may differ among class members, but the fact and type of damages is uniform among all class members and flows directly from Waitr's common conduct. A single, uniform, pre-printed contract will govern all class members' claims. Louisiana law—mandated by Waitr's own contract—applies to every class member's claims.

17. This shared nucleus of facts and law gives rise to numerous questions of law and fact which overwhelm any individual issues which might exist. Such common questions include, but are not limited to, the following:

    a. Whether Waitr used standard form contracts with customers;

    b. Whether Louisiana law governs the claims of the classes;

    c. Whether Waitr increased its rates on putative class members who entered into the standard contract;

    d. Whether Waitr implemented the rate increases through an automated customer relationship management system;

    e. Whether the rate increases Waitr imposed were not authorized by its standard form contracts;

      f.      Whether the rate increases Waitr were enacted not in good faith; and

      g.      Whether Waitr was unjustly enriched;

**B.    Numerosity.**

18.    The total number of members of the putative class is so numerous that individual joinder is impracticable. Waitr has over 8,000 "restaurant partners" many of which were subjected to the rate increases at issue in this case.

**C.    Typicality.**

19.    The claims of the named Plaintiff are typical of the claims of the classes. Plaintiff, like other class members, entered into the form contract and was subject to rate increases that were not legally justified. Plaintiff was subject to, and harmed by, the exact same common policies and practices which effected all class members.

**D.    Adequacy.**

20.    Plaintiff will fairly and adequately protect the interests of the members of the class and has no interest antagonistic to those of other class members. Plaintiff shares the same interests and was harmed by the same conduct as each other class member. Resolution of this case will inherently vindicate and redress the interests of Plaintiff equally with class members. Plaintiff has retained class counsel competent and experienced in prosecuting class actions and such class counsel is financially able to represent the classes.

**E.    Superiority and Manageability.**

21.    The class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the class is impracticable. While the total amount at issue in this litigation is sizeable, individual damages for a given plaintiff are comparatively small and class members have little incentive to pursue individual claims. The

interests of judicial economy favor adjudicating the claims for the Plaintiff class in a single forum rather than on an individual basis, thus also ensuring consistent adjudications and a uniformity of decision. The proposed class definition is objective and class membership is easily determined using customer information and financial records maintained by Waitr in electronic form. Calculation of damages can be accomplished using systematic means and objective criteria. The class action mechanism is administratively feasible and provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court.

## V. FACTUAL ALLEGATIONS

22. Waitr is a rapidly growing food delivery service with annual revenues over $69,000,000. In 2018, Waitr began operating as Waitr Holdings, Inc. and began trading on the NASDAQ stock market.

23. Plaintiff is a small business that owns and operates a restaurant in Little Rock, Arkansas. Like thousands of other small businesses in the United States that Waitr marketed its services to, Plaintiff agreed to be included in Waitr's online ordering network. In exchange for inclusion in this network, Plaintiff and class members agreed to pay Waitr a fee of 10% of each order made through the platform (called a "Service Transaction Fee") in addition to an initial set up fee (called a "Network Fee"). The agreement that establishes this relationship is a form, written contract of adhesion, which also provided that it is complete and final, and could not be modified except by a subsequent written agreement signed by both parties.

24. After agreeing to inclusion on Waitr's network and paying the initial costs, Waitr unilaterally increased the Service Transaction Fee it charges Plaintiff and putative class members with no contractual justification. Waitr did so through a uniform rate increase implemented through a centralized system that was announced in an undated letter. Upon information and

belief, unilateral increase this was intended to glean millions of unearned dollars from its customers to falsely burnish its financials before a public offering. This conduct constitutes a breach of contract, a violation of the duty of good faith and fair dealing, and has resulted in Waitr being unjustly enriched.

### A.     The Terms Of The Uniform Contracts.

25.     Waitr uses effectively identical, form agreements to contract with customers. Every class member entered into an effectively identical contract. The form contract and its exhibits, which are incorporated into the agreement, make up eight pages. All relevant terms are pre-printed by Waitr. The first and second pages of the form agreement contain blanks where the restaurant customer name and contact information is entered. "Exhibit A" of the form contract, the Services Order Form, contains a table where the amount of the initial Network Fee and the Service Transaction Fee are specified. The Service Transaction Fee is generally, if not always, 10% of each order placed through the Waitr platform. The Network Fee is substantial, often $1,500 or more.

26.     Aside from establishing the Service Transaction Fee, the form contract also contains other relevant standard provisions which (a) mandate that Louisiana law apply to every class member's claim, (b) establish a year long, auto-renewing term, (c) prohibit the alteration of the written contract, and (d) integrate the contract and limit its interpretation to the four corners of the document itself.

> a.  **"GOVERNING LAW AND FORUM.** This Agreement shall be governed by the laws of the State of Louisiana (without regard to conflicts of law principles) for any dispute between the parties or relating in any way to the subject matter of this Agreement. The sole and exclusive venue, without regard to any statute or choice of law considerations for any suit or legal proceeding arising out of this Agreement shall be exclusively brought in the Federal or state courts for Calcasieu Parish, Louisiana, and Waitr and Customer submit to personal jurisdiction of these courts . . . . The prevailing party in any litigation is entitled to recover from the non-

    prevailing party all reasonable attorneys' fees and costs incurred as a result of such litigation. "

  b. **"Renewals:** This order renews for additional 1 year periods, unless either party provides the other with written (including email) notice of non-renewal at least 30 days prior to the renewal date."

  c. **"Entire Agreement & Changes.** This Agreement and the Order or exhibits hereto constitute the entire Agreement between the parties, and supersedes any prior or contemporaneous negotiations or agreements, whether oral or written, related to this subject matter. Customer is not relying on any representation concerning this subject matter, oral or written, not included in this Agreement. No representation, promise or inducement not included in this Agreement is binding. No modification of this Agreement is effective unless in writing and signed by an authorized representative of each party, and no waiver is effective unless the party waiving the right signs a waiver in writing."

  d. **"Terms** . . . . This order and the agreement are the entire agreement between the parties, and they supersede and replace all prior and contemporaneous negotiations, agreements, representations and discussions regarding this subject matter. Only a signed writing of the parties may amend this order."

27. Notably, the form contract provides no basis by which Waitr can unilaterally change any terms to the agreement or the exhibits incorporated therein. In fact, the contract affirms that the only mechanism through which the agreement may be changed is through a written agreement signed by authorized representatives of both parties.

  **B.** **Waitr's Unlawful, Unilateral Price Increase.**

28. Despite the express prohibition on unilaterally changing the terms of the form contract, Waitr intentionally carried out a systematic and widespread rate increase without contractual authorization or agreement signed by Plaintiff and class members.

29. Waitr induced Plaintiff and class members into entering into form contracts with fixed rates. By their terms, the form contract cannot be changed except by agreement written and signed by both parties. Subsequently, Waitr brazenly and openly violated the clear terms of these agreements by unilaterally increasing the Service Transaction Fee to 15% in 2018.  The price

increase Waitr imposed was identical in timing, methodology, and intent (and similar if not identical in percentage) across its base of customers.

30. Upon information and belief, this price increase was directed by Waitr's corporate officers as part of a broad strategy to increase revenue and profit prior to the sale and public offering of the company. Waitr began business in 2013, and quickly saw significant growth. By 2018, it claimed to operate across the Southeast and Atlantic regions, with "partner restaurants" in over 30 cities and be experiencing large gains in terms of revenue and customer base. At that time, it began discussions to be bought by an investment group. In November, that group purchased Waitr for $308 million and immediately listed it on the NASDAQ stock exchange. During the negotiations for Waitr's purchase, and before it went public, Waitr implemented the unilateral fee increase at issue in this lawsuit. It then reported increased growth, year-over-year, for the quarter proceeding the public offering and increased its revenue outlook. Since then, Waitr has reported record growth and earnings and has a current valuation of over $750 million.

31. This unilateral rate increase imposed by Waitr was not allowable under the form contracts that Plaintiff and each class member entered into. There is no legal justification for Waitr's for this increase. The form contracts, which Waitr drafted and presented as a contract of adhesion, does not allow for them. Waitr did not follow the only contractually allowed method for altering the agreement: writing signed by both parties. As a direct result of its contractual breach, Waitr has wrongfully taken millions of dollars from its "restaurant partners."

### VII.   CAUSES OF ACTION

#### COUNT I
#### BREACH OF CONTRACT
#### (On Behalf of the Class)

32. All allegations and paragraphs in this complaint are incorporated by reference.

33. Plaintiff and each member of the class entered into form, written agreements with Waitr.

34. Plaintiff and each member of the class performed on their agreements.

35. As set out herein, through its practice of unilaterally increasing the Service Transaction Fee, Waitr breached the agreements with Plaintiff and each class member.

36. Plaintiff and each member of the class have been directly and proximately harmed by Waitr's breach of contract in that each paid more for Waitr's services than agreed upon.

**COUNT II**
**VIOLATION OF THE DUTY OF GOOD FAITH AND FAIR DEALING**
**IN THE BREACH OF A CONTRACT**
**(On Behalf of the Class)**

37. All allegations and paragraphs in this complaint are incorporated by reference.

38. To the extent necessary, this count is pled in the alternative.

39. Plaintiff and each member of the class entered into form, written agreement with Waitr.

40. Plaintiff and each member of the class performed on their agreements.

41. As set out herein, through its practice of unilaterally increasing the Service Transaction Fee not in accordance with any contractual provision, Waitr breached the agreements with Plaintiff and each class member.

42. Waitr's breach was not simply bad judgment, negligence, or an honest mistake as to the rights and duties of the contract. By intentionally raising the rates unilaterally, in the face of repeated and clear contractual language that it could not do so without a written and bilaterally signed agreement, Waitr's conduct evidences dishonesty, ill will, and an outright and transparent

refusal to fulfill its contractual obligation.

43. Plaintiff and each member of the class have been directly and proximately harmed by Waitr's breach of the contract and intentional breach of the covenant of good faith and fair dealing in that each paid an unlawfully and unilaterally increased rate, above what was agreed upon.

## COUNT III
## UNJUST ENRICHMENT
### (On Behalf of the Class)

44. All allegations and paragraphs in this Complaint are incorporated by reference.

45. To the extent necessary, this count is pled in the alternative.

46. Waitr, by increasing the Service Transaction Fee, realized an enrichment. Plaintiff and class members, by virtue of the increase of the Service Transaction Fee, suffered an impoverishment.

47. Because this enrichment and impoverishment resulted from the same conduct, they are connected.

48. There was no legally recognized justification or cause for this conduct and the resulting enrichment and impoverishment.

49. There is no other remedy at law available to Plaintiff and the class members.

## VIII.   PRAYER FOR RELIEF

50. Plaintiff, on behalf of itself and each member of the putative class, demands all remedies and damages available to it, including the sum of all unlawful rate increases paid to Waitr, injunctive relief, restitution, and interest. Plaintiff, on behalf of itself and each member of the putative class, consistent with the form contract and applicable law, seeks the attorneys' fees and costs incurred in bringing this action.

**Plaintiff requests a trial by jury.**

Dated:  April 30, 2019                                  Respectfully submitted,


BY:   *s/ Adras Paul LaBorde, III*

Adras Paul LaBorde, III
Louisiana Bar Number 21580
**DUDLEY DEBOISER, PC**
1075 Government Street
Baton Rouge, Louisiana 70802
Phone: 225.478.4122
Fax: 225.478.4172
PLaborde@dudleydebosier.com
Nicholas W. Armstrong
Garrett Owens
**PRICE ARMSTRONG, LLC**
2226 First Avenue South, Suite 105
Birmingham, Alabama 35223
Phone: 205.208.9588
Fax: 205.208.9598
nick@pricearmstrong.com
garrett@pricearmstrong.com

John Rainwater
**RAINWATER, HOLT & SEXTON, P.A.**
P.O. Box 17250
Little Rock, Arkansas  72222
Phone: 501.868.2500
Fax:    501.868.2508
john@rainfirm.com

13