**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **BOBBY'S COUNTRY COOKIN', LLC; CASA MANANA, INC.; QUE PASA TAQUERIA, LLC; and CASA TU SULPHUR, LLC**<br><br>      **Plaintiffs,**<br><br>      **v.**<br><br>**WAITR HOLDINGS, INC.**<br><br><br>      **Defendant.** | **Case No.: 2:19-cv-00552-TAD-KK**<br><br>**CLASS ACTION** |

## FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION COMPLAINT

Plaintiffs Bobby's Country Cookin', LLC; Casa Manana, Inc.; Que Pasa Taqueria, LLC; and Casa Tu Sulphur, LLC, individually and on behalf of all persons or entities nationwide who are similarly situated, upon personal knowledge as to facts pertaining to it individually and upon information and belief as to all other matters, based on the investigation of its counsel, against the Defendant Waitr Holdings, Inc., states as follows:

### I.      NATURE OF THE CASE

1.      Plaintiffs bring this action to challenge Waitr's systematic, repetitive breaches of the form agreement (what Waitr refers to as a "Master Services Agreement" or "MSA") it enters with its restaurant customers by charging more for its services than agreed.  Waitr made a deal with Plaintiffs and thousands of other restaurants: it would include them in its online ordering platform for a set amount of time in exchange for a fixed percentage of orders, called a "Service Transaction Fee."  Waitr broke the form MSA by instituting a practice whereby it unilaterally and

1

unlawfully raised the Service Transaction Fee for customers a number of times, the latest of which occurred in 2018. That restaurant customers could have terminated their agreements (and forfeited the money they paid to Waitr to join the platform) does alter the fact that Waitr cannot unilaterally ignore the bargain it made and charge whatever it chooses.

2.     Plaintiffs also bring this action to redress Waitr's separate, more recent, unlawful conduct. On July 1, 2019, Waitr notified all of its restaurant customers that it was terminating the all active MSAs and that the only way for Waitr's restaurant customers could remain on the platform was to sign a new MSA. This new, forced-place MSA dramatically increased restaurant customers' costs. And while the existing MSA allowed either party to terminate the agreement with 30-days' notice, Louisiana law mandates that Waitr exercise this discretion in good faith. Waitr violated the duty of good faith and fair dealing because it unscrupulously disregarded the harm it was causing Plaintiffs and class members in favor of its aims to extract more revenue from its restaurant customers and lock them into less favorable terms, all based upon purported justifications that are false.

3.     Further, this case presents a prototypical situation for class treatment. Waitr's conduct is uniform among all customers.  Plaintiffs and all class members entered into the exact same form MSA with Waitr.  The MSA with Plaintiffs and all class members mandates that uniform Louisiana law applies to all class members' claims.  The application of shared law to a common course of conduct will determine liability for the class as a whole, ensuring that the rights of thousands of small businesses are vindicated through the efficiency of a single trial.

## II.  JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $5,000,000, the proposed classes consists of more than 100 members, and minimal diversity exists.[1]

5.     This Court has personal jurisdiction over Waitr because Waitr has its registered corporate headquarters in Lake Charles, Louisiana, is authorized to do business and in fact does business in this District, the specific conduct at issue in this case originated in and emanated from this District, and Waitr could reasonably anticipate litigation in this district under traditional notions of fair play and substantial justice. Further, the form, preprinted agreement between at issue contemplates jurisdiction in this Court.

6.     Venue is proper in this Court under 28 U.S.C. § 1391. A substantial portion of the conduct giving rise to Plaintiffs' claims and to the claims of putative class members occurred in this District. The form contract at issue provides for venue for all claims in this District.

### III.     PARTIES

7.     Plaintiff Bobby's Country Cookin', LLC is an Arkansas entity with its principal place of business in Little Rock, Arkansas.

8.     Plaintiff Casa Manana, Inc. is a Louisiana entity with its principal place of business in Lake Charles, Louisiana.

9.     Plaintiff Que Pasa Taqueria, LLC is a Louisiana entity with its principal place of business in Lake Charles, Louisiana.

10.     Plaintiff Casa Tu Sulphur, LLC, is a Louisiana entity with its principal place of

---

[1] Waitr has more than 8,000 "restaurant partners," the majority of which entered into the standard contract at issue, in over 20 states.  Waitr, as a resident of Louisiana, is diverse from Plaintiff Bobby's Country Cookin', LLC, a resident of Arkansas, as well as from unnamed class members.

business in Sulphur, Louisiana.

11.     Plaintiffs respective experiences with Waitr are typical of the Service Transaction Fee Increase Class in all relevant aspects.  Plaintiffs entered into the MSA at issue with Waitr. Like all MSAs at issue in this case, Plaintiffs' contract provided that Waitr would include them in its online delivery platform in exchange for a fee and that Waitr would receive a fixed percentage of the amount ordered through the platform represented in the Service Transaction Fee in exchange for online ordering services.  It contained a year long term that would auto-renew for successive year long terms unless a party opted-out at least 30 days before renewal.  The MSA also provided that it would be governed under the laws of Louisiana and that it could not be altered in any way except through writing signed by both parties. On multiple occasions, Waitr unilaterally imposed a price increase on what it charged, raising the Service Transaction Fee each time for Plaintiffs. Including from 3.5% to 7%, from 10% to 15%, and from 7% to 15%. Waitr did this to thousands of similarly situated small businesses at the same time.

12.     Additionally, Plaintiffs' Casa Manana's, Que Pasa's, and Casa Tu's respective experiences with Waitr are typical of the Agreement Termination Class in all relevant aspects. Like all MSAs at issue, Casa Manana's, Que Pasa's, and Casa Tu's Waitr contract provided that either party could terminate the MSA with 30-days' notice. Like all MSAs, the terms of the contract were to be interpreted under Louisiana law. Louisiana law provides that a party must exercise a termination clause in good faith. Waitr did not exercise this termination clause in good faith. Waitr terminated the MSAs solely for profit and to lock restaurant customers into more unfavorable terms of the new MSA, and did so for thousands of other small businesses at the same time.

13.     Defendant Waitr Holdings, Inc. is a Delaware entity with its principal place of

4

business in Lake Charles, Louisiana.  It is the successor entity through merger to Waitr, Inc.,

operates the Waitr platform, and entered into the form contacts at issue.

### IV.    CLASS ACTION ALLEGATIONS

14.    Plaintiffs bring this action pursuant to Rule 23(a) and (b)(3), and propose the

following classes:

> **The Service Transaction Fee Increase Class**
>
> All persons or entities who reside in the United States who, at any time from
>
> May 1, 2009 through the date of class certification, entered into a written
>
> contract with Waitr, Inc., and whose Service Transaction Fee was increased.
>
> **The Agreement Termination Class**
>
> All persons or entities who reside in the United States who received
>
> notification in July 2019 that Waitr, Inc. was terminating their existing
>
> agreement effective August 1, 2019, and whose existing agreement was
>
> subsequently terminated or replaced.

15.    Excluded from the proposed class are members of the judiciary, entities currently

in bankruptcy, entities whose obligations have been discharged in bankruptcy, and governmental

entities. Also excluded from the proposed class are Waitr's employees, subsidiaries, and affiliates.

Further excluded from the class are restaurant customers whose Service Transaction Fee was

increased via a writing signed by both of the parties.

16.    "Waitr, Inc." in the above class definitions includes this entity, and all predecessors,

related entities, successors, and assigns.

17.    Plaintiffs maintain the right to create additional subclasses or classes, if necessary,

and to revise these definitions to maintain cohesive classes which do not require individual inquiry

to determine liability.

**A.** **Existence And Predominance Of Common Questions Of Law And Fact.**

18.     By imposing unlawful Service Transaction Fee increases not allowed by the MSA, Waitr engaged in a common course of conduct which gives rise to common questions of law and fact which predominate in this litigation.  This common course of conduct affected class members in the exact same manner.  The amount of damages may differ among class members, but the fact and type of damages is uniform among all class members and flows directly from Waitr's common conduct.  A single, uniform, pre-printed contract will govern all class members' claims.  Louisiana law—mandated by Waitr's own contract—applies to every class member's claims.

19.     Additionally, by terminating the agreement with all restaurant customers in bad faith, Waitr engaged in a common course of conduct which gives rise to common questions of law and fact which predominate in this litigation.  This common course of conduct affected class members in the exact same manner.  The amount of damages may differ among class members, but the fact and type of damages is uniform among all class members and flows directly from Waitr's common conduct.  A single, uniform, pre-printed contract will govern all class members' claims.  Louisiana law—mandated by Waitr's own contract—applies to every class member's claims.

20.     This shared nucleus of facts and law gives rise to numerous questions of law and fact which overwhelm any individual issues which might exist.

21.     For the Service Transaction Fee Increase Class such common questions include, but are not limited to, the following:

    a.     Whether Waitr used standard form contracts with customers;

    b.     Whether Louisiana law governs the claims of the classes;

    c.     Whether Waitr increased its rates on putative class members who entered into the

standard contract;

d.    Whether Waitr implemented the rate increases through an automated customer relationship management system;

e.    Whether the rate increases Waitr imposed were not authorized by its standard form contracts;

f.    Whether the rate increases Waitr were enacted not in good faith; and

g.    Whether Waitr was unjustly enriched;

22.    For the Agreement Termination Class such common questions include, but are not limited to, the following:

a.    Whether Waitr used standard form contracts with customers;

b.    Whether Louisiana law governs the claims of the classes;

c.    Whether Waitr notified all restaurant customers that it was terminating their agreements;

d.    Whether Waitr was required to act in good faith in terminating the agreements with restaurant customers;

e.    Whether Waitr acted in good faith in their conduct surrounding termination of the agreements; and

**B.    Numerosity.**

23.    The total number of members of the putative classes is so numerous that individual joinder is impracticable.  Waitr has over 8,000 "restaurant partners" many of which were subjected to the rate increases at issue in this case and all of which were subject to the agreement termination at issue in this case.

**C.     Typicality.**

24.     The claims of the named Plaintiffs are typical of the claims of the classes.  Plaintiffs, like other Service Transaction Fee Class members, entered into the form MSA and were subject to rate increases that were not legally justified. Plaintiffs were subject to, and harmed by, the exact same common policies and practices which effected all Service Transaction Fee Increase Class members.

25.     Plaintiffs Casa Manana, Que Pasa, and Casa Tu, like other Agreement Termination Class members entered into the form MSA and were subject to, and harmed by, the same conduct in the bad-faith termination of its agreement as all other class members. Plaintiffs Casa Manana, Que Pasa, and Casa Tu were subject to, and harmed by, the exact same common policies and practices which affected all Agreement Termination Class members.

**D.     Adequacy.**

26.      Plaintiffs will fairly and adequately protect the interests of the members of the classes and have no interest antagonistic to those of other class members.  Plaintiffs share the same interests and were harmed by the same conduct as each other class member.  Resolution of this case will inherently vindicate and redress the interests of Plaintiffs equally with class members. Plaintiffs have retained class counsel competent and experienced in prosecuting class actions and such class counsel is financially able to represent the classes.

**E.     Superiority and Manageability.**

27.     The class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the class is impracticable. While the total amount at issue in this litigation is sizeable, individual damages for a given plaintiff are comparatively small and class members have little incentive to pursue individual claims.  The

interests of judicial economy favor adjudicating the claims for the Plaintiff classes in a single forum rather than on an individual basis, thus also ensuring consistent adjudications and a uniformity of decision.  The proposed class definitions are objective and class membership is easily determined using customer information and financial records maintained by Waitr in electronic form. Calculation of damages can be accomplished using systematic means and objective criteria. The class action mechanism is administratively feasible and provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court.

## V.     FACTUAL ALLEGATIONS

28.     Waitr is a rapidly growing food delivery service with annual revenues over $69,000,000. In 2018, Waitr began operating as Waitr Holdings, Inc. and began trading on the NASDAQ stock market.

29.     Plaintiffs are small businesses that own and operate respective restaurants. Like thousands of other small businesses in the United States that Waitr marketed its services to, Plaintiffs agreed to be included in Waitr's online ordering network. In exchange for inclusion in this network, Plaintiffs and class members agreed to pay Waitr a fee calculated as a set percentage of each order made through the platform (called a "Service Transaction Fee") in addition to an initial set up fee (called a "Network Fee").  The agreement that establishes this relationship in a form, written contract of adhesion, known as a Master Services Agreement, which also provided that it is complete and final, and could not be modified except by a subsequent written agreement signed by both parties. The MSA also provided that either party could terminate the agreement with 30-days' notice.

30.     After agreeing to inclusion on Waitr's network and paying the initial costs, Waitr unilaterally increased the Service Transaction Fee it charges Plaintiffs and putative class members

with no contractual justification. Waitr did this through a Service Transaction Fee increase program implemented through a centralized system. Upon information and belief, these unilateral increases were intended to glean millions of unearned dollars from Waitr's restaurant customers simply to increase profit and falsely burnish its financials before a public offering. This conduct constitutes a breach of contract, a violation of the duty of good faith and fair dealing, and has resulted in Waitr being unjustly enriched.

31. Additionally, Waitr recently engaged in distinct unlawful conduct again designed to increase profits, as well as lock restaurant customers into new, unfavorable terms. On July 1, 2019, Waitr notified all of its restaurant customers, including Casa Manana, Que Pasa, and Casa Tu, that it was terminating the existing MSA. The only way for restaurant customers to remain on the platform was to sign a new MSA by July 31, 2019. Waitr's purported reason for doing so was so that it could "better serve" its restaurant customers. In truth, the purpose of the new MSA was simply to again increase the amount restaurant customers would pay Waitr, lock restaurant customers into an arbitration agreement and class waiver, and give it the power to change the agreement without a writing signed by both parties in the future. The manner, intent, and result of Waitr's conduct in unilaterally terminating all existing MSAs violates the duty of good faith that is imputed under Louisiana law to any right to terminate a contract.

A. **The Terms Of The Uniform Contracts (MSAs).**

32. Waitr uses effectively identical, form agreements to contract with customers. These are known as Master Services Agreements. Every class member entered into an effectively identical MSA. All relevant terms are pre-printed by Waitr. The first and second pages of the form agreement contain blanks where the restaurant customer name and contact information is entered. "Exhibit A" of the form contract, the Services Order Form, contains a table where the

amount of the initial Network Fee and the Service Transaction Fee are specified. The Service Transaction Fee is a set percentage of the dollar amount of each order placed through the Waitr platform. The Network Fee is substantial, often $1,500 or more.

33.     Aside from establishing the Service Transaction Fee, the form contract also contains other relevant standard provisions which (a) mandate that Louisiana law apply to every class member's claim, (b) establish a year long, auto-renewing term, (c) allow either party to terminate with 30-days' notice, (d) prohibit the alteration of the written contract without a writing signed by both parties and limit waivers of rights to those signed by the party waiving the right, and (e) integrate the contract and limit its interpretation to the four corners of the document itself:

  a.   **"GOVERNING LAW AND FORUM.** This Agreement shall be governed by the laws of the State of Louisiana (without regard to conflicts of law principles) for any dispute between the parties or relating in any way to the subject matter of this Agreement. The sole and exclusive venue, without regard to any statute or choice of law considerations for any suit or legal proceeding arising out of this Agreement shall be exclusively brought in the Federal or state courts for Calcasieu Parish, Louisiana, and Waitr and Customer submit to personal jurisdiction of these courts . . . . The prevailing party in any litigation is entitled to recover from the non-prevailing party all reasonable attorneys' fees and costs incurred as a result of such litigation. "

  b.    **"Renewals:** This order renews for additional 1 year periods, unless either party provides the other with written (including email) notice of non-renewal at least 30 days prior to the renewal date."

  c.   **"Term.** Either party may terminate this Agreement with 30 days' written notice, subject to all open Orders terminating."

  d.   **"Entire Agreement & Changes.** This Agreement and the Order or exhibits hereto constitute the entire Agreement between the parties, and supersedes any prior or contemporaneous negotiations or agreements, whether oral or written, related to this subject matter. Customer is not relying on any representation concerning this subject matter, oral or written, not included in this Agreement. No representation, promise or inducement not included in this Agreement is binding. No modification of this Agreement is effective unless in writing and signed by an authorized representative of each party, and no waiver is effective unless the party waiving the right signs a waiver in writing."

     e.  **"Terms** . . . . This order and the agreement are the entire agreement between the parties, and they supersede and replace all prior and contemporaneous negotiations, agreements, representations and discussions regarding this subject matter. Only a signed writing of the parties may amend this order."

34.    Notably, the form contract provides no basis by which Waitr can unilaterally change any terms to the agreement or the exhibits incorporated therein. In fact, the contract affirms that the only mechanism through which the agreement may be changed is through a written agreement signed by authorized representatives of both parties.

    **B.**    **Waitr's Unlawful, Unilateral Price Increases.**

35.    Despite the express prohibition on unilaterally changing the terms of the MSA, Waitr intentionally carried out systematic and widespread Service Transaction Fee increases without contractual authorization or agreement signed by Plaintiffs and Service Transaction Fee Increase Class members.

36.    Waitr induced Plaintiffs and Service Transaction Fee Increase Class members into entering into form contracts with fixed Service Transaction Fees. By its terms, the MSA cannot be changed except by agreement written and signed by both parties. Subsequently, Waitr brazenly and openly violated the clear terms of these agreements by unilaterally increasing the Service Transaction Fee. For example, for Plaintiffs Casa Manana, Que Pasa, and Casa Tu, the Service Transaction Fee was increased form 3.5% to 7%, and from 7% to 10% or 15%. For Plaintiff Bobby's, the Service Transaction Fee was increased from 10% to 15% in 2018. Though the precise percentage of increase of these increases may vary slightly, the Service Transaction Fee increases Waitr imposed were identical in timing, methodology, and intent across its base of customers. This is evidenced by the fact that Waitr told its customers that in 2018 it was "adopting a flat 15% rate for all transactions."

37.    Upon information and belief, these Service Transaction Fee increases were directed

by Waitr's corporate officers as part of a broad strategy to increase revenue and profit prior to the sale and public offering of the company. Waitr began business in 2013, and quickly saw significant growth. By 2018, it claimed to operate across the Southeast and Atlantic regions, with "partner restaurants" in over 30 cities and be experiencing large gains in terms of revenue and customer base. At that time, it began discussions to be bought by an investment group. In November, that group purchased Waitr for $308 million and immediately listed it on the NASDAQ stock exchange. During the negotiations for Waitr's purchase, and before it went public, Waitr implemented the unilateral fee increase in 2018. It then reported increased growth, year-over-year, for the quarter proceeding the public offering and increased its revenue outlook. Since then, Waitr has reported record growth and earnings and has a current valuation of over $750 million.

38.     These unilateral Service Transaction Fee increases imposed by Waitr were not allowable under the MSAs that Plaintiffs and each Service Transaction Fee Increase Class member entered into. There is no legal justification for Waitr's implementation of these increases. The form MSA, which Waitr drafted and presented as a contract of adhesion, does not allow for them. Waitr did not follow the only contractually allowed method for altering the agreement: writing signed by both parties.

39.     The contemplated service to be performed by Waitr were comprehensively understood by the parties and did not present a naturally dynamic situation. Waitr undertook to provide a service to its restaurant customers. Through all of the Service Transaction Fee increases, the service remained the exact same. There were no changes of the nature of the service to be performed that was not contemplated by the parties. Waitr presented supposedly-legitimate reasons for the increases: occasionally citing increased costs or a need to better serve the restaurants. These representations were untrue. The only difference was the Waitr asked to be paid

more for providing the exact same service. Waitr acted arbitrarily in thinly-veiled attempts to reap more revenue from its restaurant customers. It drew Plaintiffs and class members in by offering flat, set Service Transaction Fees, all the while knowing that it would, in breach of the clear contractual language, increase the rates when it required more revenue. This type of baiting and switching represents a bad faith breach of contract. As a direct result of its contractual breach, Waitr has wrongfully taken millions of dollars from its "restaurant partners."

40.     Additionally, Plaintiffs and Service Fee Increase Class members did not waive their rights to demand adherence to the contractual terms. Waitr did not seek, and Plaintiffs and Service Fee Increase Class members give, a written waiver of Waitr's breach as required by the MSA.

### C.     Waitr's Unlawful Agreement Termination.

41.     On July 1, 2019, Waitr notified all of its restaurant customers that it was terminating their active, automatically-renewing MSA effective August 1, 2019, regardless of when those MSA's began.  In order to continue being included on Wait's platform, all Agreement Termination Class members (including Plaintiffs Casa Manana, Que Pasa, and Casa Tu) were told they had to sign a new MSA before July 31, 2019, or Waitr would remove them from the platform and unilaterally cancel their existing contracts.  Waitr did not replay any of the upfront costs it requires for joining the Waitr platform, including for restaurant customers that had signed up recently.

42.     Waitr carried out an extensive campaign to force customers to sign the new agreements, much of which relied upon half-truths and omissions that represented the customer-wide cancellation as something other than the money grab it actually was. For example, Waitr told customers that the purpose of the agreement was to "better serve" them and help them "grow [their] businesses."

43.     The existing MSA provided either party the right to cancel with 30-day's notice.

However, any termination under this clause had to be performed in good faith. Louisiana Civil Code art. 1770 provides: "A resolutory condition that depends solely on the will of the obligor must be fulfilled in good faith." To exercise their right to terminate in good faith, a party must consider not only his own advantage, but also the hardship to which the other party will be subjected because of the termination.

44.     The method, purpose, and result of Waitr's sweeping unilateral termination, demonstrate that this termination was made in bad faith. For example, the new MSA changes the way Waitr is compensated by restaurant customers. As opposed to the fixed Service Transaction Fee in the current MSA, the new MSA provides for Waitr to be paid a "commission." The amount of this "commission" is  based on the "calendar month net food sales form the Waitr platform." Apparently, Waitr will now calculate the total dollar amount ordered from the restaurant customer's restaurant through its platform in each month. It will apply that net amount to a chart that is Exhibit A of the new MSA. The percentage of the commission depends upon what range of amounts a restaurant customers' net food sales falls between on that chart. Then, for each app user's food order in the next month, Waitr will receive the percentage yielded by reference to the chart. This commission mechanism differs from the Service Transaction Fee in two key ways. First, it is variable for every restaurant month-to-month. This means that there is no way for a restaurant to know the "commission" it will be paying Waitr month-to-month. Second, for all restaurant customers who do not have net food sales through Waitr of over $20,000 per month, the amount they are paying Waitr through this commission alone is increased significantly. Depending on the range of net food sales these restaurant customers fall into, the increase is between 4% and 10%.

45.     Second, in addition to this commission compensation arrangement, Waitr also now

charges "credit card processing and a per transaction fee." These fees did not appear in the old MSA and the amount of these fees appears nowhere on the new MSA.  Third, Waitr gave itself the ability to change any terms of the new MSA unilaterally, subject to the restaurant customer's right to terminate. This is a change from the old MSA that required a writing signed by both parties to change the agreement.  Fourth, Waitr included an arbitration and class waiver in the new MSA. This changes the remedies available to restaurant customers.

46.     Thus, Waitr will be taking a larger fee from essentially all restaurant customers in the form of the "commission" arrangement; every restaurant will be paying more total to Waitr due to the new credit card processing and per transaction fees; restaurant customers (even the best performing) have no certainty over the rate they will be paying Waitr for the same exact service it had under the old MSA because of the month-to-month calculation; restaurant customers further have no certainty over the rate they will be paying Waitr for the same exact service because Waitr can unilaterally change the terms of the agreement; and, restaurant customers purportedly give up remedies to challenge Waitr for future unlawful conduct..

47.     It is clear that Waitr's purported reason for terminating the old MSA, "to better serve" restaurant customers, was not true. Waitr is an expanding company. The termination of the old MSA in favor of the new payment terms was simply the most recent attempt by Waitr to extract more revenue from its restaurant customers and, through the other terms of the new MSA, to make it easier to do so in the future and to chill litigation.

48.     These changes, and the extortive, misleading, and sweeping manner in which Waitr implemented them establishes that the termination was in bad faith and complete disregard of the damage it represented to Plaintiffs Casa Manana, Que Pasa, and Casa Tu, and the Agreement Termination class members. Waitr's motives in disregarding the old MSA and seeking enhanced

profit for providing the same exact service, to the detriment of Plaintiffs Casa Manana, Que Pasa, Casa Tu and the Agreement termination Class members were dishonest, and of questionable morals. Because of the bad faith termination of the old MSA, Plaintiffs Casa Manana, Que Pasa, Casa Tu, and Agreement Termination Class members were unable to realize the benefit of their bargain, surrendered the value of Network Fees paid, and, to the extent they accepted the new MSA under such circumstances, were subjected to increased payments to Waitr in providing the same service.

## VI.     CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (On Behalf of the Service Transaction Fee Increase Class)

49.     All allegations and paragraphs in this complaint are incorporated by reference.

50.     Plaintiffs and each member of the Service Transaction Fee Increase Class entered into form, written agreements with Waitr known as a Master Services Agreements.

51.     Plaintiffs and each member of the Service Transaction Fee Increase Class performed on their agreements.

52.     As set out herein, through its practice of unilaterally increasing the Service Transaction Fee not allowed by the MSAs, Waitr breached the agreements with Plaintiffs and each Service Transaction Fee Increase Class member.

53.     Plaintiffs and each member of the Service Transaction Fee Increase Class have been directly and proximately harmed by Waitr's breach of contract in that each paid more for Waitr's services (that remained unchanged) than agreed upon.

## COUNT II
## VIOLATION OF THE DUTY OF GOOD FAITH AND FAIR DEALING
## IN THE BREACH OF A CONTRACT
### (On Behalf of the Service Transaction Fee Increase Class)

54.     All allegations and paragraphs in this complaint are incorporated by reference.

55.     To the extent necessary, this count is pled in the alternative.

56.     Plaintiffs and each member of the Service Transaction Fee Increase Class entered into form, written agreements with Waitr known as Master Services Agreements.

57.     Plaintiffs and each member of the Service Transaction Fee Increase Class performed on their agreements.

58.     As set out herein, through its practice of unilaterally increasing the Service Transaction Fee not in accordance with any contractual provision, Waitr breached the agreements with Plaintiffs and each Service Transaction Fee Increase Class member.

59.     Waitr's breach was not simply bad judgment, negligence, or an honest mistake as to the rights and duties of the contract. By intentionally raising the Service Transaction Fee unilaterally, in the face of repeated and clear contractual language that Waitr itself drafted, that provided it could not do so without a written and bilaterally signed agreement, Waitr's conduct evidences dishonesty, ill will, an outright and transparent refusal to fulfill its contractual obligation, intent, and questionable morals.

60.     Waitr's motives were dishonest, in ill will, in outright and transparent refusal to fulfill its contractual obligation, and of questionable morals. Despite any thinly-veiled language in the notice letters sent to Plaintiffs and Service Transaction Fee Class members, the Service Transaction Fee increases were made simply to realize extra revenue for providing the exact same service outlined in the MSA. This is not a simply breach based on misunderstanding. Waitr clearly implemented these price increases intentionally, in violation of contractual language it knew

existed and that it had drafted, to boost its revenue purely at its restaurant customers' expense.

61.    Plaintiffs and each member of the Service Transaction Fee Increase Class have been directly and proximately harmed by Waitr's breach of the contract and intentional breach of the covenant of good faith and fair dealing in that each paid an unlawfully and unilaterally increased Service Transaction Fee, above what was agreed upon.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of the Service Transaction Fee Increase Class)**

62.    All allegations and paragraphs in this Complaint are incorporated by reference.

63.    To the extent necessary, this count is pled in the alternative.

64.    Waitr, by increasing the Service Transaction Fee, realized an enrichment. Plaintiffs and Service Transaction Fee Increase Class members, by virtue of the increase of the Service Transaction Fee, suffered an impoverishment.

65.    Because this enrichment and impoverishment resulted from the same conduct, they are connected.

66.    There was no legally recognized justification or cause for this conduct and the resulting enrichment and impoverishment.

67.    There is no other remedy at law available to Plaintiffs and the Service Transaction Fee Increase Class members.

**COUNT IV**
**BREACH OF THE DUTY OF GOOD FAITH**
**(On Behalf of the Agreement Termination Class)**

68.    All allegations and paragraphs in this Complaint are incorporated by reference.

69.    To the extent necessary, this count is pled in the alternative.

70.    Plaintiffs Casa Manana, Que Pasa, Casa Tu, and each member of the Agreement

Termination Class entered into form, written agreements with Waitr known as Master Services Agreements.

71.     These MSAs gave either party the right to terminate the Agreement with 30-days' notice.

72.     Louisiana law, as reflected in <u>La. Civ. Code art. 1770</u>, requires that the right to terminate an agreement must be exercised in good faith.

73.     As described above, Waitr's conduct in terminating the old MSA in favor of the new MSA was motivated by dishonesty, ill will, and questionable morals.  Waitr's conduct in seeking additional profit and favorable terms in a new agreement, forsaking the old automatically-renewing agreement was in bad faith and completely disregarding the damage it represented to Plaintiffs Casa Manana, Que Pasa, Casa Tu, and the Agreement Termination class members, was a termination in bad faith. Waitr's motives in disregarding the old MSA and seeking enhanced profit for providing the same exact service.

74.     Plaintiffs Casa Manana, Que Pasa, Casa Tu, and each member of the Agreement Termination Class have been directly and proximately harmed by Waitr's bad faith termination of the old MSA in that each was unable to realize the benefit of their bargain, surrendered the value of Network Fees paid, and, to the extent they accepted the new MSA under such circumstances, were subjected to increased payments to Waitr in providing the same service.

**COUNT V**
**UNJUST ENRICHMENT**
**(On Behalf of the Agreement Termination Class)**

75.     All allegations and paragraphs in this Complaint are incorporated by reference.

76.     To the extent necessary, this count is pled in the alternative.

77.     Waitr, by terminating the MSA, realized an enrichment. Plaintiffs Casa Manana,

Que Pasa, Casa Tu, and Agreement Termination Class members, by virtue of the termination of their MSAs, suffered an impoverishment.

78.     Because this enrichment and impoverishment resulted from the same conduct, they are connected.

79.     There was no legally recognized justification or cause for this conduct and the resulting enrichment and impoverishment.

80.     There is no other remedy at law available to Plaintiffs Casa Manana, Que Pasa, Casa Tu, and the Agreement Termination Class members.

## VII.    PRAYER FOR RELIEF

81.     Plaintiffs, on behalf of themselves and each member of the putative Classes, demand all remedies and damages available to it, including the sum of all unlawful rate increases paid to Waitr, damages resulting from Waitr's unlawful termination of the old MSA, injunctive relief, restitution, and interest. Plaintiffs, on behalf of themselves and each member of the putative Classes, consistent with the form contract and applicable law, seek the attorneys' fees and costs incurred in bringing this action.

**Plaintiffs request a trial by jury.**

Dated: January 21, 2020                              Respectfully submitted,

                                                    *s/ Nicholas W. Armstong*
                                                    Nicholas W. Armstrong
                                                    Garrett Owens
                                                    **PRICE ARMSTRONG, LLC**
                                                    2226 First Avenue South, Suite 105
                                                    Birmingham, Alabama 35223
                                                    Phone: 205.208.9588
                                                    Fax: 205.208.9598
                                                    nick@pricearmstrong.com
                                                    garrett@pricearmstrong.com

Adras Paul LaBorde, III
Louisiana Bar Number 21580
**DUDLEY DEBOISER, PC**
1075 Government Street
Baton Rouge, Louisiana 70802
Phone: 225.478.4122
Fax: 225.478.4172
PLaborde@dudleydebosier.com

John Rainwater
**RAINWATER, HOLT & SEXTON, P.A.**
P.O. Box 17250
Little Rock, Arkansas  72222
Phone: 501.868.2500
Fax:    501.868.2508
john@rainfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 21, 2020, I filed the foregoing using the Court's CM/ECF system which will send notice of such filing to all counsel of record.

*/s/ Nicholas W. Armstrong*
*/s/ Adras Paul LaBorde, III*
*/s/ John Rainwater*
