UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| BOBBY'S COUNTRY COOKIN', LLC | * | |
| Plaintiff, | * | NO. 2:19-cv-00552-TAD-KK |
| | * | |
| v. | * | DISTRICT JUDGE DOUGHTY |
| | * | |
| WAITR HOLDINGS, INC. | * | MAG. JUDGE KATHLEEN KAY |
| Defendant. | * | |
| | * | |

*********************************************

MEMORANDUM IN SUPPORT OF MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT BY WAITR HOLDINGS INC.</u>

Respectfully submitted,

AMELIA W. KOCH, T.A. (2168)
ANNE DERBES WITTMANN (20584)
ERIN PELLETERI HOWSER (30666)
MATTHEW C. JUNEAU (33210)
**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**
201 St. Charles Ave., Suite 3600
New Orleans, Louisiana  70170
Telephone: (504) 566-5200
Facsimile: (504) 636-3930
*akoch@bakerdonelson.com*
*awittmann@bakerdonelson.com*
*epelleteri@bakerdonelson.com*
*mjuneau@bakerdonelson.com*

**ATTORNEYS FOR DEFENDANT,
WAITR HOLDINGS INC.**

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ................................................................................................................1

I.     Factual Background .................................................................................................2

II.    Law and Argument .................................................................................................6

       A.    Summary Judgment Standard. ...................................................................... 6

       B.    Plaintiffs' STF Increase Breach of Contract Claim
             Fails as a Matter of Law Because Plaintiffs' Acquiesced
             in the STF Increase. ..................................................................................... 6

       C.    Plaintiffs Are Equitably Estopped from Asserting the
             STF Increase Claims. ................................................................................. 11

       D.    Plaintiffs' Bad Faith Breach of Contract Claim Based on the
             STF Increase Also Fails as Matter of Law Because it Requires
             a Breach as a Predicate. ............................................................................. 12

       E.    Plaintiffs' Unjust Enrichment Claims Must be Dismissed
             Because Plaintiffs Have Alternative Remedies at Law. ..................................... 13

III.   Conclusion ...........................................................................................................15

Certificate of Service ...........................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>C</u>ASES

*Amitech U.S.A., Ltd. v. Nottingham Constr. Co.*,
   57 So. 3d 1043 (La. App. 1st Cir. 2010).......................................................................... 7

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)............................................................................................................ 6

*Aqua Pool Renovations, Inc. v. Paradise Manor Cmty. Club, Inc.*,
   880 So. 2d 875 (La. App. 5th Cir. 2004) ..................................................................... 7

*Bradley v. Allstate Ins. Co.*,
   620 F.3d 509 (5th Cir. 2010) ........................................................................................ 13

*Cajun Constructors, Inc. v. Fleming Constr. Co.*,
   951 So. 2d 208 (La. App. 1st Cir. 2006)...................................................................... 7

*Carriere v. Bank of Louisiana,*
   702 So. 2d 648 (La. 1996) ............................................................................................... 14

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)............................................................................................................ 6

*Driver Pipeline Co., Inc. v. Cadeville Gas Storage, LLC,*
   150 So. 3d 492 (La. App. 2$^{d}$ Cir. 2014) ................................................................. 7, 8

*Favrot v. Favrot,*
   68 So. 3d 1099 (La. App. 4th  Cir. 2011) ............................................................... 12

*Fleming v. JE Merit Constructors, Inc.*,
   985 So. 2d 141 (La. App. 1st  Cir. 2008)....................................................................... 7

*Governor Claiborne Apartments, Inc. v. Attaldo*,
   256 La. 218, 235 So.2d 574 (1970) ............................................................................... 9

*Hale v. M.J.J.K., LLC*,
   No. 12-1515, 2014 WL 2429376 (E.D. La. May 29, 2014)..................................... 7

*Harrison v. Christus St. Patrick Hosp.*,
   430 F. Supp. 2d 591 (W.D. La. 2006)........................................................................ 14

*Illinois Cent. Gulf R.R. Co. v. Int'l Harvester Co.*,
    368 So. 2d 1009 (La. 1979) ............................................................ 8, 9

*Jim Walter Homes v. Jessen*,
    732 So. 2d 699 (La. App. 3$^d$ Cir. 3/31/99) ................................ 14

*John Bailey Contractor v. State Dep't of Transp. & Dev.*,
    439 So. 2d 1055 (La. 1983) ............................................................ 11

*Johnson v. Capital City Ford Co.*,
    85 So. 2d 75 (La. App. 1st Cir. 1955) ......................................... 8

*JP Mack Industries LLC v. Mosaic Fertilizer, LLC*,
    970 F. Supp. 2d 516 (E.D. La. 2013) ............................................ 14

*Lantech Const. Co., L.L.C. v. Speed*,
    15 So. 3d 289 (La. App. 5th  Cir. 2009) ....................................... 7

*Leeway Properties, Inc. v. Jonesfilm*,
    No. 11-2628, 2012 WL 4471848 (E.D. La. Sept. 27, 2012) ......... 6

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) ....................................................... 6

*Morris v. Friedman*,
    663 So. 2d 19 (La. 1995) .............................................................. 11

*Norris v. Causey*,
    No. 14-1598, 2016 WL 311746 (E.D. La. Jan. 26, 2016) .............. 8

*Pelican  Elec. Contractors v. Neumeyer*,
    419 So. 2d 1 (La. App. 4th Cir. 1982) .......................................... 7

*R.R. Mgmt. Co. v. CFS Louisiana Midstream Co.*,
    428 F.3d 214 (5th Cir. 2005) ....................................................... 8

*Taita Chemical Co., Ltd. v. Westlake Styrene Corp.*
    246 F.3d 377 (5th Cir. 2001) ................................................. 7, 11

*Walters v. MedSouth Record Mgmt., LLC*,
    38 So. 3d 241 (La. 2010) .............................................................. 14

*Wechem, Inc. v. Evans*,
    274 So. 3d 877 (La. App. 5th Cir. 2019) ................................. 7, 9

*Wilkinson v. Wilkinson,*
   323 So. 2d 120 (La. 1975) ........................................................................... 11

*Zaveri v. Condor Petroleum Corp.*,
   27 F. Supp. 3d 695 (W.D. La. 2014) ...................................................... 13, 14

## STATUTES

Louisiana Civil Code Ann. art. 1927 ............................................................... 8

Louisiana Civil Code art. 1942 ....................................................................... 8

Louisiana Civil Code art. 2298 ..................................................................... 14

## RULES

Federal Rules of Civil Procedure, Rule 8 ..................................................... 14

Federal Rules of Civil Procedure, Rule 56(c) ................................................. 6

**MAY IT PLEASE THE COURT:**

Waitr Holdings Inc. ("Waitr") respectfully submits this memorandum in support of its Motion for Partial Summary Judgment seeking dismissal with prejudice of the Service Transaction Fee ("STF") Increase claims filed against it by plaintiffs, Bobby's Country Cookin', LLC ("Bobby's"), Casa Manana, Inc. ("Casa Manana"), Casa Tu Sulphur, LLC ("Casa Tu"), and Que Pasa Taqueria, LLC ("Que Pasa") (collectively, "Plaintiffs").

## <u>INTRODUCTION</u>

In their Complaint, Plaintiffs assert claims against Waitr on behalf of themselves and two proposed classes of Waitr's restaurant partners – the putative "Service Transaction Fee Increase Class" and the putative "Agreement Termination Class."  This Motion for Partial Summary Judgment is directed to Plaintiffs' STF Increase claims, Counts I, II, and II of their First Amended and Supplemental Class Action Complaint (hereinafter "Complaint") [R. Doc. No. 48].

The STF Increase claims include alleged causes of action for breach of contract (Count I), bad faith breach of contract (Count II), and unjust enrichment (Count III).  These claims are based on Plaintiffs' contention that Waitr violated the contracts between them by increasing the STF charged to Waitr's restaurant partners ("Restaurant Partners") on each customer transaction without a written modification to the contracts signed by the parties.  However, Plaintiffs' breach of contract claim based on the STF Increase (Count I) fails as a matter of law.

Following written notice of Waitr's intention to increase the STF, Plaintiffs failed to raise any objection, continued doing business with Waitr under the modified STF – reaping the benefits of customer orders and resulting revenues – and chose not to exercise their right to

1

terminate the contracts.   Pursuant to Louisiana law, these facts establish that Plaintiffs acquiesced in the modification by silence and inaction and, further, that Plaintiffs are estopped from claiming that Waitr's STF Increase was a breach of their contracts.

Plaintiffs' bad faith breach of contract claim based on the STF Increase (Count II) also fails as a matter of law because a predicate requirement for a such a claim is a breach of contract. For the reasons just stated, Waitr did not breach their contracts with Plaintiffs.   Finally, Plaintiffs' unjust enrichment claim based on the STF Increase (Count III) is barred because Plaintiffs have alternative legal claims.

Accordingly, for the reasons more fully discussed below, Plaintiffs' STF Increase claims fail as a matter of law and Waitr is entitled to summary judgment dismissal of Counts I, II, and III of Plaintiffs' Complaint with prejudice.

## I.   <u>Factual Background</u>

Waitr operates an online food order and delivery platform.[1]  It contracts with Restaurant Partners to be part of its network of restaurants from which customers place orders for food delivery.[2]   Waitr drivers pick up the order from the Restaurant Partner and deliver it to the customer.[3]  The customer's payment is then processed through an online payment system that

---

[1] Declaration of Mark Killebrew ("Killebrew Decl."), dated December 9, 2020, ¶ 4, attached as Exhibit "1."

[2] *Id.* at ¶ 5.  Plaintiffs' contracts with Waitr are styled as either a Master Services Agreement ("MSA") or a Subscription Services Agreement ("SSA") and provide Plaintiffs with access to, and usage of, Waitr's online ordering platform.  Plaintiff Bobby's executed a MSA with Waitr on July 25, 2017 ("Bobby's MSA"); Plaintiffs Casa Manana, Casa Tu, and Que Pasa executed their respective SSA with Waitr on October 15, 2015 ("Casa Manana's SSA"), February 10, 2016 ("Casa Tu's SSA"), and July 22, 2015 ("Que Pasa's SSA"), respectively.  *Id.* at ¶¶ 8, 9, 10, and 11.  Bobby's MSA attached at Tab "A" of Ex. "1," Killebrew Decl.; Casa Manana's SSA attached at Tab "B" of Ex. "1," Killebrew Decl.; Casa Tu's SSA attached at Tab "C" of Ex. "1," Killebrew Decl.; and Que Pasa's SSA attached at Tab "D" of Ex. "1," Killebrew Decl.

[3] *Id.* at ¶ 6.

2

automatically pays the Restaurant Partner and remits the STF to Waitr.[4]  Plaintiffs' contracts

with Waitr provide the applicable STF charged on each order.[5]

Plaintiffs rely on similar integration clauses in their contracts to assert their STF Increase

claims.  They maintain that, "[d]espite the express prohibition on unilaterally changing the terms

of the MSA, Waitr intentionally carried out systematic and widespread Service Transaction Fee

increases without contractual authorization or agreement signed by Plaintiffs and Service

Transaction Fee Increase Class members."[6]  The operative MSA between Plaintiff Bobby's and

Waitr provides:

> **Entire Agreement & Changes.** This Agreement and the Order or exhibits hereto
> constitute the entire Agreement between the parties, and supersedes any prior or
> contemporaneous negotiations or agreements, whether oral or written, related to
> this subject matter.  Customer is not relying on any representation concerning this
> subject matter, oral or written, not included in this Agreement.  No representation,
> promise or inducement not included in this Agreement is binding.  No
> modification of this Agreement is effective unless in writing and signed by an
> authorized representative of each party, and no waiver is effective unless the party
> waiving the right signs a waiver in writing.  Nothing in this Agreement, express or
> implied, is intended to confer or shall be deemed to confer upon any persons or
> entities not parties to this Agreement, any rights or remedies under or by reason of
> this Agreement.[7]

Similarly, each of the operative SSAs between Waitr and Plaintiffs Casa Manana, Casa

Tu, and Que Pasa provide:

> **Entire Agreement and Changes.** This agreement and the order constitute the
> entire agreement between the parties and supersede any prior or contemporaneous
> negotiations or agreements, whether oral or written, related to this subject matter.
> Customer is not relying on any representation concerning this subject matter, oral

---

[4] *Id.* at ¶ 7.

[5] *Id.* at ¶ 12.

[6] Complaint [R. Doc. No. 48], p. 12, ¶ 35.

[7] Ex. "1," Killebrew Decl., Tab "A," Bobby's MSA, ¶11(b), [WAITR 000005].

or written, not included in this agreement.  No representation, promise or inducement not included in this agreement is binding.  No modification of this agreement is effective unless both parties sign it, and no waiver is effective unless the party waiving the right signs a waiver in writing.[8]

Beginning in the Fall of 2017, Waitr sent written notice to those restaurant partners with a STF below 15%, including Plaintiffs, of Waitr's intention to increase their STF to 15%.  The notice to Plaintiff Bobby's stated:

> Dear Restaurant Partner,
>
> Waitr's mission has always been to put our restaurant partners first.  This is evident in our competitive pricing for transactions and detail since our founding and our commitment to providing you access to millions of customers in the markets we serve.  The national pricing for on-demand delivery services ranges from 28% to 35% per transaction.
>
> While we have tried hard to maintain our current price structure, the rigors and liability of running an on-demand service are changing.  Insurance companies that write the policies necessary for us to keep our drivers insured and protect our restaurant partner from liability are scrambling to find rate equilibrium in this changing business.  As such, our cost of doing business in the past year has increased significantly, leaving us at a price disadvantage.  Rather than matching our competitor's pricing, the Waitr team has worked hard to streamline our business and improve our technology so that we may continue to provide you an advantage over other services.
>
> So that we may continue to improve our products and services and bring you thousands of new orders, we are adjusting our pricing model.  Effective August 11, 2018, Waitr is adopting a flat 15% rate for all transactions.  Even with our adjustment, the Waitr rate is still the lowest in the nation, and we are committed to keep it that way.
>
> The commitment to our mission and partners remains the same.  We appreciate your business and look forward to continued growth.

---

[8] Ex. "1," Killebrew Decl., Tab "B," Casa Manana's SSA," ¶11(b), [WAITR 000017]; Ex. "1," Killebrew Decl., Tab "C," Casa Tu's SSA, ¶11(b), [WAITR 000029]; and Ex. "1," Killebrew Decl., Tab "D," Que Pasa's SSA, ¶11(b), [WAITR 000038].

If you have any questions or ideas on how we can partner further, do not hesitate to email ideas@waitrapp.com.[9]

Plaintiffs Casa Manana, Casa Tu, and Que Pasa were provided with a substantively identical notice; the only difference being that they received notification of the planned STF increase earlier, as their STF Increase was to be effective on November 1, 2017.[10]  Plaintiffs have all acknowledged receipt of their respective increase notifications from Waitr.[11]

Plaintiffs' agreements with Waitr provided for the termination of the agreements in the event of a material breach and the failure to cure the alleged breach after 30 days' written notice.[12]  However, rather than give Waitr the appropriate written notice to effectuate termination of the agreements after notice of the STF Increase, Plaintiffs chose to remain on the Waitr platform and continued to reap the benefits of Waitr's services.  This is evidenced by the sales and disbursement reports available to both Waitr and Plaintiffs through the Waitr app.  Those reports establish that Plaintiffs continued to accept, fulfill, and get paid for Waitr orders well after they were notified of the STF increase to 15%, and well after the STF increase became effective.[13]

---

[9] Waitr's STF increase notice to Plaintiff Bobby's, [WAITR 000045] attached at Tab "E" to Ex. "1," Killebrew Decl.

[10] Waitr's STF increase notice to Plaintiffs Casa Manana, Casa Tu, and Que Pasa, [WAITR 000044] attached at Tab "F" to Ex. "1," Killebrew Decl.

[11] Plaintiff Bobby's Objections and Responses to Waitr's First Set of Requests for Admissions, Answer to Admission No. 2, attached as Exhibit "2"; Plaintiffs Casa Manana, Casa Tu, and Que Pasa's Objections and Responses to Waitr's First Set for Requests for Admission, Answers to Admission No. 3, attached as Exhibits "3," "4," and "5," respectively.

[12] ¶ 7(b) of Plaintiffs' contracts with Waitr:  Tab "A" to Ex. "1," Killebrew Decl., [WAITR 000003]; Tab "B" to Ex. "1," Killebrew Decl., [000016]; Tab "C" to Ex. "1," Killebrew Decl., [000027]; and Tab "D" to Ex. "1," Killebrew Decl., [000037].

[13] Waitr's Sales and Distribution Reports for Plaintiffs are discussed more fully below.  The Sales and Distribution Reports, which were produced by Waitr in their native CSV format pursuant to the Protective Order entered in this case, contain confidential financial information of both Waitr and Plaintiffs.  PDF files of the native

## II.   **Law and Argument**

### A.   *Summary Judgment Standard.*

Rule 56(c) of the Federal Rules of Civil Procedure provide that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  The nonmovant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Leeway Properties, Inc. v. Jonesfilm*, No. 11-2628, 2012 WL 4471848, at *2 (E.D. La. Sept. 27, 2012) (citing *Celotex Corp.*, 477 U.S. at 324).

### B.   *Plaintiffs' STF Increase Breach of Contract Claim Fails as a Matter of Law Because Plaintiffs' Acquiesced in the STF Increase.*[14]

Notwithstanding the integration clause in the agreements that require modifications to be in writing,[15] Plaintiffs' STF Increase breach of contract claim (Count I) must be dismissed

---

CSV files of the Sales and Distribution Reports are being filed under seal as Exhibits "6" [WAITR 001759],  "7" [WAITR 001760], "8" [WAITR 001761], and "9" [WAITR 001762]; *see also* excerpts to the Sales and Distribution Reports attached at Tabs "G," "H," "I," and "J" to Ex. "1," Killebrew Decl.

[14] Plaintiffs' contracts are "governed by the laws of the State of Louisiana (without regard to conflicts of law principles) for any dispute between the parties or relation in any way to the subject matter of this agreement." ¶10 of Tab "A" to Ex. "1," Killebrew Decl., [WAITR 000005]; Tab "B" to Ex. "1," Killebrew Decl., [WAITR 000016]; Tab "C" to Ex. "1," Killebrew Decl., [WAITR 000029]; and Tab "D" to Ex. "1," Killebrew Decl., [WAITR 000037].

because Plaintiffs acquiesced in the STF Increase implemented by Waitr.  Citing a long line of Louisiana cases, the U.S. Fifth Circuit Court of Appeals in *Taita Chemical Co., Ltd. v. Westlake Styrene Corp*. acknowledged that "it is well established that even if the written contract contains a provision requiring that all modifications be in writing, . . . either oral agreement or conduct can nonetheless prove modification."[16]  Indeed, Louisiana law has consistently recognized that modification of an agreement can be presumed by silence, inaction, or implication.[17]

Failing to object to a proposed change to the terms of a contract after receiving notice of that change evinces an agreement to the modification.  *See*, *e.g.*, *Aqua Pool Renovations, Inc.*, 880 So. 2d at 883 (noting that defendant's silence/lack of opposition despite awareness of additional work being performed demonstrated its agreement to the additional charges); and *Hale v. M.J.J.K., LLC*, No. 12-1515, 2014 WL 2429376, at *5 (E.D. La. May 29, 2014) (finding that plaintiff's inaction – failing to assert its ownership right in properties until four and five years after the last lots were sold – further support defendant's theory that plaintiff had agreed to accept a different property, thereby modifying the parties' original agreement).  Additionally, taking action consistent with the proposed modification also evinces an agreement to the modification.  *See Pelican  Elec. Contractors v. Neumeyer*, 419 So. 2d 1, 3-5 (La. App. 4th Cir.

---

[15] The text of the integration clauses contained in Plaintiffs' agreements with Waitr set forth on pp. 3-4 above.

[16] 246 F.3d 377, 387 (5th Cir. 2001).  This tenet of Louisiana law has been repeatedly reinforced.  *See Fleming v. JE Merit Constructors, Inc.*, 985 So. 2d 141, 146 (La. App. 1st Cir. 2008), (citing *Cajun Constructors, Inc. v. Fleming Constr. Co.*, 951 So. 2d 208, 214 (La. App. 1st Cir. 2006),); *Aqua Pool Renovations, Inc. v. Paradise Manor Cmty. Club, Inc.*, 880 So. 2d 875, 880 (La. App. 5th Cir. 2004); *Lantech Const. Co., L.L.C. v. Speed*, 15 So. 3d 289, 293 (La. App. 5th Cir. 2009); *Wechem, Inc. v. Evans*, 274 So. 3d 877, 888 (La. App. 5th Cir. 2019); and *Driver Pipeline Co., Inc. v. Cadeville Gas Storage, LLC*, 150 So. 3d 492, 500 (La. App. 2d Cir. 2014).

[17] *Id.* at 501 (citing *Amitech U.S.A., Ltd. v. Nottingham Constr. Co.*, 57 So. 3d 1043 (La. App. 1st Cir. 2010), *writ denied*, 63 So. 3d 1036 (La. 2011), and *writ denied*, 63 So. 3d 1043 (La. 2011)); *Fleming*, *supra*; *Aqua Pool Renovations, Inc.*, *supra*; *Cajun Constructors, Inc.*, *supra*; *Lantech Constr. Co.*, *supra*; and *Wechem, Inc.*, *supra*.

1982), *writ denied*, 423 So. 2d 1150 (La. 1982) (finding that a contract had been modified where plaintiff paid change orders despite a contractual provision that required written agreement to deviations from the original contract for work).

In *Driver Pipeline Co., Inc. v. Cadeville Gas Storage, LLC*, *supra*, the contract stated, "[t]his Contract can be hereafter modified or amended *only by a document duly executed by the authorized official of each of the Parties.*"[18]  Discussing the impact of the integration clause, the court stated that while an integration clause "precludes any prior or contemporaneous agreements which are not set forth in the contract," such a clause "does not prohibit subsequent agreements or modifications which may be made orally, or by silence, inaction, or implication."[19]  After outlining Louisiana law, the court concluded:

> [T]he jurisprudence allow[s] a party to a [contract] to prove the modification of a written contract orally or by silence, inaction, or implication, even where the contract provides that modifications must be in writing … .[20]

The result in *Driver Pipeline* is consistent with the law pertaining to the creation of a contract.   Louisiana Civil Code art. 1942 provides that "[w]hen, because of special circumstances, the offeree's silence leads the offeror reasonably to believe that a contract has been formed, the offer is deemed accepted."   As a result, "the existence of a contract can be implied from the parties' actions and conduct that indicate a mutual intent to be bound to their respective obligations."[21]  "Thus, an offeree may accept by 'silent deed as well as by word.'"[22]

---

[18] 150 So. 3d at 501 (emphasis added).

[19] *Id.* at 502.

[20] *Id.* at 505.

[21] *R.R. Mgmt. Co. v. CFS Louisiana Midstream Co.*, 428 F.3d 214, 222–23 (5th Cir. 2005) (citing La. Civ. Code. Ann. art. 1927); and *Illinois Cent. Gulf R.R. Co. v. Int'l Harvester Co.*, 368 So. 2d 1009, 1011-12 (La. 1979).

The Louisiana Supreme Court has explained that silence constituting acceptance should not be presumed, but silence plus other actions can equal consent.

> [E]xcept in those instances in which the statutory law creates a legal presumption, the mere silence of an offeree should not, in principle, be considered as involving acceptance on his part. **His consent can result from silence, however, when combined with other facts or acts so as to imply or indicate his consent unequivocally**.   1 Civil Law Translations Aubry & Rau, Obligations, s 343, p. 307 (1965). See, *Governor Claiborne Apartments, Inc. v. Attaldo*, 256 La. 218, 235 So.2d 574 (1970).[23]

In a very recent Louisiana Fifth Circuit Court of Appeal decision, *Wechem, Inc. v. Evans*, *supra*, the plaintiff sought to enforce the non-compete and non-solicitation provisions of defendant's exclusive account agreement.  Defendant argued that plaintiff's modification to the compensation scheme in his written contract constituted a breach of the agreement rendering the non-compete and no-solicitation provisions invalid and unenforceable.[24]   The court disagreed. Holding that the new compensation scheme was agreed upon, the court found the representative's acceptance of the changed commission scheme to be important:

> Thereafter, [defendant] *worked under, and received payments pursuant to, the modified compensation policy for an additional nine months prior to his separation from the company, without evidence of complaint.* Accordingly, we find the record evidence does not support [defendant's] contention that [plaintiff's] modification to [defendant's] commission scheme, . . . constituted a breach of the Agreement nullifying the non-compensation/non-solicitation provisions.[25]

---

[22] *Norris v. Causey*, No. 14-1598, 2016 WL 311746, at *5 (E.D. La. Jan. 26, 2016) (quoting *Johnson v. Capital City Ford Co.*, 85 So. 2d 75, 81 (La. App. 1st Cir. 1955)).

[23] *Illinois Cent. Gulf R.R. Co.*, 368 So. 2d at 1012 (emphasis added).

[24] 274 So. 3d at 887.

[25] *Id.* at 889 (emphasis added).

Here, following Waitr's notice of its intention to increase the STF to 15%, Waitr did not receive any objection to the proposed increase from Plaintiffs until the filing of their Class Action Complaint.[26]  Instead, Plaintiffs remained on the Waitr platform, continued accepting and fulfilling orders, and received payment for those orders commensurate with the increased STF rate of 15%.[27]  Plaintiffs Casa Manana, Casa Tu and Que Pasa continued in this fashion for 18 months prior to the filing of the original Class Action Complaint and continued in this fashion another 2+ months until their new agreement was signed on July 19, 2019.[28]  Bobby's also continued in this fashion for 8 ½ months prior to filing to the filing of the original Class Action Complaint and for an additional 2 months thereafter until completion of its last order on June 25, 2019.[29]  Moreover, if Plaintiffs objected to the proposed STF Increase or had not intended to

---

[26] Ex. "1," Killebrew Decl., ¶¶ 15 and 22.  Plaintiffs' original Class Action Complaint was filed on April 30, 2018 [R. Doc. 1].

[27] Plaintiff Bobby's did so until June 25, 2019 and Plaintiffs' Casa Manana, Casa Tu, and Que Pasa did so until they entered into new contracts with Waitr on July 19, 2019.  *See*, Plaintiffs' Sales and Distribution Reports, filed under seal as Exhibits "6," "7," "8," and "9," and excerpts attached at Tabs "G,' "H," "I," and "J" to Ex. 1, Killebrew Decl.; Ex. "1," Killebrew Decl., ¶¶ 20 and 24; and Ex. "2," Answer to Admission No. 8, and Exs. "3," "4," and "5," Answers to Admission No. 9.

[28] Sales and Disbursement Reports of Plaintiffs Casa Manana, Casa Tu, and Que Pasa:  Exs. "7" [WAITR 001760], "8" [WAITR 001761], and "9" [WAITR 001762] filed under seal and excerpts attached at Tabs "H," "I," and "J," to Ex. "1," Killebrew Decl., respectively.  *See also*, Plaintiffs' Objections and Responses to Waitr's First Set of Request for Admissions, Exs. "3," "4," and "5," Answers to Admission Nos. 9 and 15 through 19.  As referenced above, the 15% STF Increase to Plaintiffs Casa Manana, Casa Tu, and Que Pasa was effective November 1, 2017, the original Class Action Complaint was filed on April 30, 2019 [R. Doc. 1], and their new contracts, attached hereto *in globo* as Exhibit "10" [WAITR 000020-000022, WAITR 000032-000034 and WAITR 000041-000043] were executed on July 19, 2019.

[29] Sales and Disbursement Report of Plaintiff Bobby's, Ex. "6" [WAITR 001759], filed under seal and excerpt attached at Tab "G" to Ex. "1," Killebrew Decl.  As referenced above, the 15% STF Increase to Plaintiff Bobby's was effective August 11, 2018, and the original Class Action Complaint was filed on April 30, 2019.  Following its acquisition of Bite Squad, another online food order and delivery platform, Waitr advised its restaurant partners in the Little Rock, Arkansas market, including Plaintiff Bobby's, that it would be closing its platform in the Little Rock market effective June 26, 2019, and transitioning to the Bite Squad platform.  Although Bobby's was afforded the opportunity to transfer to the Bite Squad platform, Bobby's did not transition to the Bite Squad platform.  Therefore, Bobby's last order on the Waitr platform was completed on June 25, 2019, the day before Waitr closed its platform in the Little Rock market.  Ex. "1," Killebrew Decl., ¶¶ 17 through 20.

consent to the STF increase, Plaintiffs had the right to terminate their contracts with Waitr if Plaintiffs believed that the STF Increase represented a material breach of their contracts.[30] Plaintiffs took no such action.[31]

Pursuant to Louisiana law and the undisputed facts, Plaintiffs accepted the modified contract terms by their failure to object to the increase and their continued performance under the agreements at the increased, 15% STF.  Therefore, Plaintiffs' breach of contract claim is barred as a matter of law.

### C.   *Plaintiffs are Equitably Estopped from Asserting the STF Increase Claims.*

Plaintiffs' acceptance of the benefits of the Waitr platform after notification and implementation of the STF Increase also triggers the doctrine of equitable estoppel to preclude their STF Increase claim.  In *Taita Chemical Co. v. Westlake Styrene Corp.*, *supra* the Fifth Circuit outlined the doctrine of equitable estoppel under Louisiana law:

> The Louisiana Supreme Court has defined equitable estoppel as "'the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct.'" *Morris v. Friedman*, 663 So. 2d 19, 25 (La. 1995) (quoting *John Bailey Contractor v. State Dep't of Transp. & Dev.*, 439 So. 2d 1055, 1059 (La. 1983)). The doctrine, in proper circumstances, will prevent a party "from taking a position contrary to his prior acts, admissions, representations, or silence." *John Bailey*, 439 So. 2d at 1059–60; *accord Wilkinson v. Wilkinson*, 323 So. 2d 120, 126 (La. 1975). Equitable estoppel thus has three elements: "(1) A representation by conduct or work; (2) Justifiable reliance thereon; and (3) A change of position to one's detriment because of the reliance." *John Bailey*, 439 So. 2d at 1059–60.[32]

---

[30] ¶ 7(b) of Tab "A" to Ex. "1," Killebrew Decl. [WAITR 000003]; Tab "B" to Ex. "1," Killebrew Decl. [WAITR 000016]; Tab "C" to Ex. "1," Killebrew Decl. [WAITR 000027]; and  Tab "D" to Ex. "1," Killebrew Decl. [WAITR 000037].

[31] Following Waitr's notice of its intention to increase the STF to 15%, Waitr did not receive any notice or communication from Plaintiffs claiming that Waitr was in material breach of Plaintiffs' contracts.  Ex. "1," Killebrew Decl., ¶¶ 16 and 23.

[32] 246 F.3d at 389.

11

Here, it is undisputed that Plaintiffs received a 30-day notice from Waitr that the STFs under their agreements would be increased to 15% and that Plaintiffs had the ability to terminate their business relationship with Waitr upon 30 days' written notice.  Plaintiffs, however, took no steps to end their relationship.  Plaintiffs gave no indication, much less written notice, that they objected to the increase or that they considered the STF Increase to be a breach of their agreements.  To the contrary, as previously established, Plaintiffs continued doing business on the Waitr platform fulfilling orders and receiving payment in accordance with the 15% STF Increase.  In this regard, Waitr justifiably relied on Plaintiffs' conduct by continuing their contractual relationship at the increased fee rate.  To the extent Plaintiffs are allowed to move forward with their STF Increase claims, Waitr's justifiable reliance upon Plaintiffs' conduct was to its detriment.  Significantly, had Plaintiffs informed Waitr that they objected to the increased fees, Waitr could have terminated their agreements and prevented the accrual of any alleged damages based on Plaintiffs' payment of increased SFTs.

Waitr's reasonable reliance on Plaintiffs' failure to object to the STF Increase, their failure to terminate the contracts, and their continued participation in the Waitr platform after the effective date of the STF Increase, coupled with a detrimental change in position by Waitr, warrants the application of equitable estoppel to preclude Plaintiffs' STF Increase claims.

> D.    *Plaintiffs' Bad Faith Breach of Contract Claim Based on the STF Increase Also Fails as Matter of Law Because it Requires a Breach as a Predicate.*

For the reasons set forth above, Plaintiffs breach of contract claim is barred as a matter of law.  Therefore, Plaintiffs' bad faith breach of contract claim also fails.  As the court held in *Favrot v. Favrot*, 68 So. 3d 1099, 1109-1110 (La. App. 4th Cir. 2011), consideration of whether

Waitr was or was not in bad faith must necessarily be preceded by a finding that Waitr breached

its agreements with Plaintiffs:

> Judicial inquiry, however, into an obligor's . . . good-faith performance of the obligation is not triggered by the morality of a party's intentions, but is initiated only when the obligee has proven a failure to perform an obligation.  Stated another way, *we do not examine a party's good faith (or bad faith) unless and until we find that the party has failed to perform an obligation*, from which the obligee has sustained damages.
>
> Thus, judicial determination of good-faith (or bad-faith) failure to perform a conventional obligation is always preceded by a finding that there was a failure to perform, or a breach of the contract.

(Emphasis added).  *See also*, *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 528 (5th Cir. 2010)

("[b]ecause [plaintiffs] have not established any plausible breach of contract for unpaid

[additional living expenses], there is no basis for asserting a bad faith claim").

> E.    *Plaintiffs' Unjust Enrichment Claims Must be Dismissed*
> *Because Plaintiffs Have Alternative Remedies at Law.*

Finally, as a matter of law, Plaintiffs also have no cause of action for unjust enrichment

based on the STF Increase claims.  There are five requisite elements of a claim for unjust

enrichment: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment

and the impoverishment; (4) an absence of justification or cause for the enrichment and

impoverishment; and (5) no other remedy at law.[33]  "The plaintiff[s] must prove each of the five

elements."[34]

---

[33] *Zaveri v. Condor Petroleum Corp.*, 27 F. Supp. 3d 695, 699 (W.D. La. 2014).

[34] *Id.*

13

As reflected in their Complaint, Plaintiffs pled the existence of contracts between them and Waitr and have, indeed, asserted a cause of for breach of those contracts.[35]   The mere fact that Plaintiffs have alleged the availability of another remedy at law, bars their unjust enrichment claim.[36]   In fact, this Court has previously and specifically held that "[u]njust enrichment  is an equitable remedy, **unavailable when a contract exists**."[37]

Plaintiffs allege that their unjust enrichment claim is being pled "in the alternative."[38] Such alternative pleading is insufficient for Plaintiffs to avoid dismissal of their unjust enrichment claim.  In *Zaveri v. Condor Petroleum Corp., supra*, this Court rejected the argument that the "unjust enrichment claim should survive under this Court's procedural pleading rule, Rule 8, F.R.C.P., which allows alternative claims to be pled."[39]   Citing Louisiana Civil Code article 2298, this Court stated:

> Thus, "the unjust enrichment remedy is only applicable to fill a gap in the law where no express remedy is provided."  *Walters*, 38 So. 3d at 244.   Stated differently, "where there is a rule of law directed to the issue, an action must not be allowed to defeat the purpose of said rule."  *Carriere v. Bank of Louisiana*, 702 So. 2d 648, 673 (La. 1996) (on rehearing).  Thus, "[t]he mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment."  *Walters*, 38 So. 3d at 244 *citing Jim Walter Homes v. Jessen*, 732 So. 2d 699, 706 (La. App. 3rd Cir.

---

[35] Complaint [R. Doc. No. 48], p. 17, Count I.

[36] *Harrison v. Christus St. Patrick Hosp.*, 430 F. Supp. 2d 591, 596-597 (W.D. La. 2006); and La. Civ. Code art. 2298, providing, in part:  "A person who has been enriched without cause at the expense of another person is bound to compensate that person. . . .  **The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule**" (emphasis added).  *See also*, *Walters v. MedSouth Record Mgmt., LLC*, 38 So. 3d 241, 242 (La. 2010) (per curiam) (finding that the law provided plaintiff with another remedy and, therefore, unjust enrichment remedy was unavailable); and *JP Mack Industries LLC v. Mosaic Fertilizer, LLC*, 970 F. Supp. 2d 516, 520-522 (E.D. La. 2013) (the last element of an unjust enrichment claim requires that "there must be no other remedy at law available to the plaintiff").

[37] *Harrison*, 430 F. Supp. 2d at 597 (emphasis added).

[38] Complaint [Record Doc. No. 48], p. 19, Count III, ¶ 62.

[39] 27 F. Supp. 3d at 700.

3/31/99) ("[t]o find that Jim Walter Homes now has no other remedy and to provide it one under unjust enrichment would be tantamount to allowing any plaintiff who let his cause of action prescribe, or any plaintiff who knowingly wrote a bad contract, to recover under an enrichment theory").

Similarly, Plaintiffs' self-serving allegation that "[t]here is no other remedy at law available to Plaintiffs and the Service Transaction Fee Increase Class members" is belied by its own pleading and is insufficient for Plaintiffs to avoid dismissal of their unjust enrichment claim. Plaintiffs' unjust enrichment claim is premised on the assertion that "Waitr, by increasing the Service Transaction Fee, realized an enrichment" and that Plaintiffs "suffered an impoverishment."[40]   This claim is indistinguishable from Plaintiffs alleged breach of contract claim wherein Plaintiffs assert that as a result of the alleged breach of contract, "Plaintiffs and each member of the Service Transaction Fee Increase Class have been directly and proximately harmed by Waitr's breach of contract in that each paid more for Waitr's services (that remained unchanged) than agreed upon."[41]

Again, the existence of a contract between each of the Plaintiffs and Waitr, and Plaintiffs' asserted claim for the alleged breach of those contracts seeking damages for increased STFs, preclude Plaintiffs from also asserting an unjust enrichment claim.  This is true even where, as here, the breach of contract claim must also be dismissed.

### III.   Conclusion

For the foregoing reasons, Plaintiffs' STF Increase claims fail as a matter of law.  By failing to object to the STF Increase or seek termination of the agreements due to a material breach, continuing to accept and fulfill orders, and receiving payment commensurate with the

---

[40] Complaint [R. Doc. No. 48], p. 19, Count I, ¶ 64.

[41] *Id.* at p. 17, ¶ 53.

15% STF Increase, Plaintiffs acquiesced in the modification of their agreements with Waitr. Accordingly, Plaintiffs' breach of contract claim fails and, for that reason, Plaintiffs' bad faith breach of contract also fails.  Plaintiffs are also estopped from recovering any damages from Waitr as a result of STF Increase because Plaintiffs did not object when they received notice of the increase, resulting in Waitr justifiably charging the increased fees to Plaintiffs for an extended period of time before this lawsuit was filed (and, in some cases, even after the suit was filed). Finally, Plaintiffs' alternative unjust enrichment claim based on the STF Increase also fail as matter of law because Plaintiffs have (and have in fact asserted) other legal remedies.

Accordingly, Waitr is entitled to summary judgment dismissal of Plaintiffs' STF Increase claims and, therefore, respectfully urges this Court to grant its Motion for Partial Summary Judgment dismissing the claims asserted in Counts I, II, and II of their Complaint [R. Doc. No. 48].

Respectfully submitted,

**BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC**

BY:    *s/ Erin Pelleteri Howser*
          AMELIA W. KOCH, T.A. (2168)
          ANNE DERBES WITTMANN (20584)
          ERIN PELLETERI HOWSER (30666)
          MATTHEW C. JUNEAU (33210)
          201 St. Charles Ave., Suite 3600
          New Orleans, Louisiana  70170
          Telephone: (504) 566-5200
          Facsimile: (504) 636-3930
          *akoch@bakerdonelson.com*
          *awittmann@bakerdonelson.com*
          *epelleteri@bakerdonelson.com*
          *mjuneau@bakerdonelson.com*

**ATTORNEYS FOR DEFENDANT,
WAITR HOLDINGS INC.**

### CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of December, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel for all parties.

                                        *s/ Erin Pelleteri Howser*

17