# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | |
|---|---|
| **BOBBY'S COUNTRY COOKIN', LLC, et al.**<br><br>  Plaintiff,<br><br>  v.<br><br>**WAITR HOLDINGS, INC.**<br><br>  Defendant. | Case No.: 2:19-cv-00552-TAD-KK |

## RESPONSE TO MOTION TO ENFORCE SETTLEMENT

Plaintiffs agree with Waitr that the parties entered into terms to settle this litigation, and that those terms are enforceable. But the provisions Waitr wants to dictate to give effect to this agreement not only undermine those terms, they create the very real possibility that the finality of this settlement could be attacked by thousands of small businesses who end up with much less than the parties agreed.

The parties agreed to resolve this matter for a settlement fund of $2.5 million and that Waitr could fund this amount through the issuance of Waitr stock. But, after this agreement, it became apparent that, after calculating number of shares that results in the correct dollar amount, it would take at least six business days for Waitr to actually transfer shares to class members.[1] The pricing mechanism Waitr has proposed—whereby the three-day low before the calculation is used to determine how many shares will be transferred six days later—creates enormous risk. Waitr's stock price is incredibly volatile and trending consistently downwards. It is down over 87% over

---

[1] It could be much longer; Waitr will only agree to use "best efforts" to get the transfer done that quickly, there is no actual deadline.

the past year and over 60% in the past six months. Under Waitr's proposal, on one recent day class members would have received 75% less than agreed. (*See* Table, below).

Plaintiffs' proposal to ensure that the fund bargained for is realized is that (1) the price used to calculate the number of shares recognize that there is, on average, a 7% drop over the following days before those shares are received and (2) if, despite this safeguard, the amount to be distributed has fallen by 5% or more at the time of transfer, the calculation is redone. Waitr can identify no prejudice it would incur through this pricing mechanism. Plaintiffs respectfully suggest that another week or two, in this year-long process, is hardly problematic given the importance of this issue. And Waitr has over 154 million shares outstanding and has issued more than 25 million over the past 6 months alone; even if a re-calculation were to occur (which is unlikely) it would not be significant.

The parties agreed to a "settlement fund of $2.5 million…." This was not a settlement for a certain number of shares (as Waitr has done in the past). Whether or not Plaintiffs receive the value they agreed to is the very consideration that gives rise to the settlement. Waitr's proposal threatens this. Plaintiffs' proposal provides an easy, workable solution. There are no other issues outstanding. Therefore, Plaintiffs respectfully request that the Court enforce the Settlement Agreement attached as Exhibit A (which reflects Waitr's proposed agreement other than these pricing provisions).[2]

### A. The Terms of the Settlement

The parties are agreed on the fundamental terms of the settlement, which are as follows:

- A total settlement fund of $2.5 million, subject to court approval;
- It will be a claims-made settlement;

---

[2] The only differences between the two documents (Plaintiffs' Proposed Agreement, Exhibit A and Waitr's Proposed Agreement, Doc. 172-8) are highlighted in Exhibit A.

2

- Waitr will fund the settlement (and attorneys' fees, costs, and incentive awards) through the issuance of Waitr shares of common stock.

- Waitr will pay the first $25,000 in class administration costs, and plaintiffs will be responsible for the balance (to be capped at $25,000), which may be included as case expenses;

- Subject to Court approval, Plaintiffs will seek attorneys' fees of 1/3 of the total amount of the settlement fund (i.e. $833,333 of $2,500,000), reimbursement of expenses not to exceed $40,000, and class incentive awards not to exceed $30,000 - Waitr will not oppose these fees, reimbursements and award applications, all of which will be paid from the $2.5 million settlement fund. The balance of the pool will be paid to claimants that opt into the settlement, it being understood that those claimants that do not opt in will not receive any shares which will result in a reduction of the balance of the pool.

(Correspondence, Ex. B). These are the same terms Waitr argues should be enforced. (*See* Doc. 172-1 at 2). There are no outstanding disputes about other material terms, such as the form of notice or the formula of awarding amounts to claimants. (*See* Plaintiff's Proposed Agreement, Ex. A). The only issue is how to most accurately determine the number of shares that will equate to dollar amount to which the parties have agreed.

Notably, this is not an agreement whereby Waitr provides a certain number of shares. Waitr recently entered into such an agreement to settle a class action in unrelated litigation. (*See* Halley Settlement, Ex. C at 10). But Plaintiffs could not agree to that here. Rather, in this case, the settlement fund was established in terms of dollars. (*See* Correspondence, Ex. B). And, during negotiations, Plaintiffs' agreement to allow Waitr to fund the settlement by issuing shares was a significant concession based on Waitr's repeated, adamant claims that "shares were the same as money" and that there would be no difference apart from the necessity to convert them to cash. And nowhere in the agreed upon terms does it state that the settlement fund may ultimately be worth less than $2,500,000, or that Waitr may dictate how the share price is determined.

3

After agreeing to the terms, the parties began negotiating the settlement agreement itself. Waitr's initial draft included—for the first time—the delay between calculating the number of shares to be distributed and the distribution of shares, and the share price that Waitr proposed be used to do so. (*See* Correspondence, Ex. B). Along with working through the other issues (all of which have been resolved now) Plaintiffs flagged that this delay and price proposed could result in much less being received than was agreed. (*See id*.). Waitr maintained that the transfer agent could not transfer shares for at least six days, and would only agree to use "reasonable efforts" to ensure this occurred. As this is Waitr's agent and responsibility, Plaintiffs agreed to the six-day timeline.

And so, the only remaining issue became how to calculate the shares to be distributed such that the actual terms of the agreement are given effect and class members received what they should, even though it would take Waitr at least six days from setting the share price to transfer the shares. But, when Plaintiffs attempted to ensure that the delay between the calculation of shares and those shares being received by class members would not result in far less than agreed-upon being received, Waitr refused to negotiate. Waitr would not even discuss this issue with Plaintiffs for weeks, maintaining a "take it or leave it" stance and not offering any compromise. (*See* Correspondence, Ex. B). Unfortunately, the gravity of the issue requires the Court's resolution.

**B.     The Problem With Waitr's Pricing Proposal And Plaintiffs' Solution To That Problem.**

To understand the problem with Waitr's pricing proposal it is necessary to look at the recent history of its share price, which evidences a continual drop and occasional precipitous falls. Again, the share price has fallen over 87% over the past year and over 60% in the past six months. Waitr's proposal is that the previous three-day low is used to set the share price on day zero, its

transfer agent calculates how many shares each claimant is due using this price, and then—six days later—that number of shares is transferred. Apply this proposal to the recent past history of Waitr's share price shows how significantly the amount actually received would differ than that calculated and agreed upon[3]:

| | | | | WAITR'S PROPOSAL | | |
|---|---|---|---|---|---|---|
| Date | Close | | 3 day low | difference after transfer | | as a percentage |
| 1/2/22 | $ | 0.78 | | | | |
| 1/3/22 | $ | 0.71 | | | | |
| 1/4/22 | $ | 0.73 | | | | |
| 1/5/22 | $ | 0.68 | $ 0.71 | Set Price | (Day 0) | |
| 1/6/22 | $ | 0.64 | $ 0.68 | | (Day 1) | |
| 1/9/22 | $ | 0.65 | $ 0.64 | | (Day 2) | |
| 1/10/22 | $ | 0.66 | $ 0.64 | | (Day 3) | |
| 1/11/22 | $ | 0.67 | $ 0.64 | | (Day 4) | |
| 1/12/22 | $ | 0.65 | $ 0.65 | | (Day 5) | |
| 1/13/22 | $ | 0.63 | $ 0.65 | Transfer | (Day 6) | |
| 1/17/22 | $ | 0.59 | $ 0.63 | $ (0.12) | | -20% |
| 1/18/22 | $ | 0.60 | $ 0.59 | $ (0.08) | | -14% |
| 1/19/22 | $ | 0.61 | $ 0.59 | $ (0.03) | | -4% |
| 1/20/22 | $ | 0.61 | $ 0.59 | $ (0.03) | | -6% |
| 1/23/22 | $ | 0.59 | $ 0.60 | $ (0.05) | | -8% |
| 1/24/22 | $ | 0.60 | $ 0.59 | $ (0.05) | | -9% |
| 1/25/22 | $ | 0.59 | $ 0.59 | $ (0.07) | | -11% |
| 1/26/22 | $ | 0.56 | $ 0.59 | $ (0.07) | | -13% |
| 1/27/22 | $ | 0.56 | $ 0.56 | $ (0.03) | | -6% |
| 1/30/22 | $ | 0.56 | $ 0.56 | $ (0.03) | | -6% |
| 1/31/22 | $ | 0.56 | $ 0.56 | $ (0.04) | | -6% |
| 2/1/22 | $ | 0.53 | $ 0.56 | $ (0.07) | | -12% |
| 2/2/22 | $ | 0.51 | $ 0.53 | $ (0.08) | | -17% |
| 2/3/22 | $ | 0.54 | $ 0.51 | $ (0.05) | | -9% |
| 2/6/22 | $ | 0.53 | $ 0.51 | $ (0.06) | | -12% |
| 2/7/22 | $ | 0.52 | $ 0.51 | $ (0.04) | | -8% |

---

[3] All information taken from Nasdaq through Fidelity.com.

| Date | Price | | Prev | Change | % |
|---|---|---|---|---|---|
| 2/8/22 | $ 0.52 | $ | 0.52 | $ (0.04) | -7% |
| 2/9/22 | $ 0.52 | $ | 0.52 | $ (0.04) | -8% |
| 2/10/22 | $ 0.51 | $ | 0.52 | $ (0.05) | -11% |
| 2/13/22 | $ 0.49 | $ | 0.51 | $ (0.04) | -9% |
| 2/14/22 | $ 0.51 | $ | 0.49 | $ 0.00 | 0% |
| 2/15/22 | $ 0.51 | $ | 0.49 | $ 0.00 | 0% |
| 2/16/22 | $ 0.49 | $ | 0.49 | $ (0.02) | -4% |
| 2/17/22 | $ 0.45 | $ | 0.49 | $ (0.07) | -15% |
| 2/21/22 | $ 0.41 | $ | 0.45 | $ (0.11) | -27% |
| 2/22/22 | $ 0.45 | $ | 0.41 | $ (0.06) | -14% |
| 2/23/22 | $ 0.45 | $ | 0.41 | $ (0.06) | -13% |
| 2/24/22 | $ 0.57 | $ | 0.41 | $ 0.08 | 14% |
| 2/27/22 | $ 0.55 | $ | 0.45 | $ 0.06 | 11% |
| 2/28/22 | $ 0.53 | $ | 0.45 | $ 0.04 | 8% |
| 3/1/22 | $ 0.53 | $ | 0.53 | $ 0.04 | 8% |
| 3/2/22 | $ 0.50 | $ | 0.53 | $ 0.05 | 10% |
| 3/3/22 | $ 0.49 | $ | 0.50 | $ 0.08 | 17% |
| 3/6/22 | $ 0.48 | $ | 0.49 | $ 0.07 | 15% |
| 3/7/22 | $ 0.47 | $ | 0.48 | $ 0.06 | 13% |
| 3/8/22 | $ 0.51 | $ | 0.47 | $ 0.06 | 12% |
| 3/9/22 | $ 0.47 | $ | 0.47 | $ 0.03 | 5% |
| 3/10/22 | $ 0.46 | $ | 0.47 | $ (0.08) | -17% |
| 3/13/22 | $ 0.30 | $ | 0.46 | $ (0.23) | -75% |
| 3/14/22 | $ 0.32 | $ | 0.30 | $ (0.19) | -59% |
| 3/15/22 | $ 0.32 | $ | 0.30 | $ (0.17) | -54% |
| 3/16/22 | $ 0.39 | $ | 0.30 | $ (0.09) | -22% |
| 3/17/22 | $ 0.43 | $ | 0.32 | $ (0.05) | -11% |
| 3/20/22 | $ 0.41 | $ | 0.32 | $ (0.06) | -15% |
| 3/21/22 | $ 0.41 | $ | 0.39 | $ (0.06) | -15% |
| 3/22/22 | $ 0.39 | $ | 0.41 | $ (0.06) | -16% |
| 3/23/22 | $ 0.40 | $ | 0.39 | $ 0.10 | 25% |
| 3/24/22 | $ 0.41 | $ | 0.39 | $ 0.11 | 26% |
| 3/27/22 | $ 0.38 | $ | 0.39 | $ 0.08 | 21% |
| 3/28/22 | $ 0.40 | $ | 0.38 | $ 0.08 | 20% |
| 3/29/22 | $ 0.39 | $ | 0.38 | $ 0.07 | 18% |
| 3/30/22 | $ 0.37 | $ | 0.38 | $ (0.02) | -7% |
| 3/31/22 | $ 0.35 | $ | 0.37 | $ (0.07) | -19% |
| 4/3/22 | $ 0.36 | $ | 0.35 | $ (0.03) | -9% |
| 4/4/22 | $ 0.35 | $ | 0.35 | $ (0.04) | -12% |

|  | Average |
|---|---|
|  | -7% |
|  | Maximum |
|  | -75% |

On average, the value of what class members would receive is 7% less than agreed. But there are also multiple situations where this would be 54%, 59%, or even 75% less. The risk to class members is apparent. Again, the parties did not agree to a certain number of shares. They agreed to a dollar value (a "$2.5 million fund") with the caveat that Waitr could satisfy this amount by transferring the equivalent number of shares, as Waitr readily admits. (*See, e.g.,* Correspondence, Ex. B). If Waitr had wished to have the certainty of a specific number of shares, it could have attempted to negotiate as much—as it did in the earlier Halley Settlement. (*See* Ex. C at 10). But Plaintiffs had significant concerns with Waitr funding the settlement through shares and expressly did not agree to a set number of shares. The fund is not funded until the shares are transferred; until then, Waitr has provided no consideration. The entire premise of the agreed-upon terms is that the number of shares would be equivalent to specific amounts when received. Waitr's proposal undermines this basic consideration.

Not only would such a result deprive Plaintiffs of the core consideration they are to receive in this bargain, it would threaten the very finality of the settlement. Indeed, the settlement notices Waitr itself drafted inform class members that "Gross Settlement Amount" is "$2,500,000 which will be funded with shares of common stock of Waitr Holdings Inc." (Doc. 172-8 at 33). The formulas for calculation of individual payments are all in dollar amounts, not numbers of shares. (*See id.*). For class members to submit a claim form believing they will receive a certain amount of money in Waitr shares, but for the amount ultimately received to be significantly less, could raise significant issues. It is in no party's interest—nor in the Court's—for any of the 10,000 small

business class members to challenge these payments after distribution. Nor would it serve the Court's role as the "gatekeeper" of a class settlement responsible for ensuring a fair outcome.

Plaintiffs' alternative proposal solves this problem. Plaintiffs have agreed that Waitr's transfer agent may use the three-day low closing price to calculate the number shares to be distributed, and that the agent may have six days to accomplish the transfer. Plaintiffs simply propose that (1) when the transfer agent calculates the shares to be transferred, it adds 7% to account for the average drop in the intervening days until they are actually distributed and (2) if, on the day of transfer, the amount to be distributed is 5% less than that calculated (or more) the process be repeated. (*See* Plaintiffs' Proposed Agreement, Ex. A).

This solution addresses both the consistent downward trend in the share price (and thus Waitr's concern that the process could be borne out repeatedly) and the possibility that there are precipitous drops. It alleviates the risk that an amount substantially less than that agreed upon will actually be funded. It gives effect to the material term that Waitr will create a "$2.5 million fund" and meaning to the notice and payment calculation provisions which are all in terms of dollars.

**C.    There Is No Harm To Waitr, Particularly In Comparison To The Harm Of Class Members Receiving Less than Agreed.**

The prejudice to the Plaintiffs, the class, and the judicial administration of the settlement absent Plaintiffs' proposal is significant. The only prejudice Waitr, on the other hand, has identified is that the settlement administrator "would have to recalculate the shares to be transferred for each verified claimant indefinitely until the proposed mark is met…." (Doc. 172-1 at 5). First, this is a red herring. Since the beginning of the year, Plaintiff's proposal would have resulted in the calculation being redone less than 28% of the time. (*See* Table, above). This correlates to a less than 8% chance of it happening twice. The addition of a week, or two, to the claims process

to ensure that the basic relief agreed upon is actually provided does not seem much of a burden. And any such burden falls on the class, who is delayed receiving their relief, not upon Waitr.

Further, there is no harm to Waitr in issuing additional shares even if a re-calculation was necessary. Waitr has over 154 million shares outstanding. It has issued more than 25 million new shares over the past 6 months, largely to fund purchases of other companies and to give to its executives. Leaving aside to the fact that there is no prejudice to Waitr in paying what it actually agreed to pay, if a recalculation results in more shares the difference would hardly be notable to Waitr.

In fact, the prejudice to the class is so great, and the lack of prejudice to Waitr so apparent, that it gives rise to a question as to Waitr's intent. Waitr has a large amount of control over its stock price. By issuing new stock, creating different classes of stock, making earnings or profit disclosures (required or not), or even engineering a stock split, Waitr could devalue the stock itself. And—notably—Waitr was unwilling to commit to a firm six-day transfer, refusing to agree to anything other than that its transfer agent would use "reasonable efforts" to meet that deadline. (Doc. 172-9 at 6). Waitr has always approached this case with a scorched-earth mentality, evidenced now in their willingness to propose a compromise (or even discuss one for weeks) and the baseless request for attorney's fees associated with its motion. If it approaches the settlement itself as it has the litigation, Waitr may well use these loopholes to deliberately decrease the amount the class actually receives beyond what was agreed.

**D.     Conclusion**

There is an agreement to resolve this case. The parties agree as to that. But the provisions regarding how the number of shares is to be determined, to ensure that the dollar amounts agreed

9

to are actually received, are crucial.  Therefore, Plaintiffs respectfully request that Court enforce the Settlement Agreement attached as Exhibit A.

Dated: April 6, 2022

Respectfully Submitted,

BY:

*/s/ Nicholas W. Armstrong*
Nicholas W. Armstrong
Garrett Owens
**PRICE ARMSTRONG, LLC**
2226 First Avenue South, Suite 105
Birmingham, Alabama 35233
Phone: 205.208.9588
Fax: 205.208.9598
nick@pricearmstrong.com
garrett@pricearmstrong.com

Adras Paul LaBorde, III
Louisiana Bar Number 21580
**DUDLEY DEBOSIER, PC**
1075 Government Street, Louisiana 70802
Phone: 225.478.4122
Fax: 225.478.4271
PLaborde@dudleydebosier.com

John Rainwater
**RAINWATER, HOLT & SEXTON, P.A.**
P.O. Box 17250
Little Rock, Arkansas 72222
Phone: 501. 868.2500
Fax: 501/868.2508
john@rainfirm.com

# **CERTIFICATE OF SERVICE**

I certify that on April 6, 2022 I filed the foregoing with the Clerk of Court using the Courts ECF filing system which will provide electronic notice of such filing to all counsel of record.

*/s/ Nicholas W. Armstrong*
**PRICE ARMSTRONG, LLC**
