UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

BOBBY'S COUNTRY COOKIN', LLC            CIVIL ACTION NO.  2:19-CV-00552

VERSUS                                  JUDGE TERRY A. DOUGHTY

WAITR HOLDINGS, INC.                    MAG. JUDGE KATHLEEN KAY

<u>MEMORANDUM RULING</u>

Before the Court is a Motion for Partial Summary Judgment [Doc. No. 121] filed by Defendant Waitr Holdings, Inc. ("Waitr").  An Opposition [Doc. No. 187] was filed by Plaintiffs Casa Manana, Inc. ("Casa Manana"), Que Pasa Taqueria, LLC ("Que Pasa"), and Casa Tu Sulphur, LLC ("Casa Tu") (collectively, "Casa Plaintiffs") on August 2, 2022.  A Reply [Doc. No. 191] was filed by Waitr on August 9, 2022.

For the reasons set forth herein, Waitr's Motion for Partial Summary Judgment [Doc. No. 121] is **GRANTED.**

I.      BACKGROUND

On April 30, 2019, Bobby's Country Cookin, LLC ("Bobbys") filed a Class Action lawsuit against Defendant Waitr, individually, and on behalf of, all persons or entities nationwide who are similarly situated.[1] Bobby's Complaint alleged breach of contract (Count I), violation of the duty of good faith and fair dealing in the breach of contract (Count II), and unjust enrichment (Count III).[2] On March 19, 2020, a First Amended and Supplemental Class Action Complaint was filed by Bobby's, which added Casa Manana, Que Pasa, and Casa Tu as Plaintiffs.[3] In this Amended

---

[1] [Doc. No. 1].

[2] [Id.]

[3] [Doc. No. 48].

1

Complaint, Plaintiffs proposed two classes: (1) The Service Transaction Fee Increase Class, and (2) The Agreement Termination Class.  In addition to the previous three counts, Casa Plaintiffs added a breach of the duty of good faith claim (Count IV) and an unjust enrichment claim (Count V) on behalf of The Agreement Termination Class ("Agreement Termination").[4]

Casa Plaintiffs' claims on Count IV (breach of the duty of good faith) and Count V (unjust enrichment) are at issue in this Motion for Partial Summary Judgment regarding the Agreement Termination Claims.  Defendant contends that the Agreement Termination Claims should be dismissed based on the undisputed evidence regarding their good faith negotiations with the Casa Plaintiffs. On the contrary, Casa Plaintiffs assert that they have offered enough evidence to pass the summary judgment threshold in putting good faith at issue and thus, the case should not be dismissed.

To make clear, only the second set of claims (Count IV and Count V) regarding the Agreement Termination are at issue in this Motion. These claims arise from Waitr's termination of the agreements between it and all class members in 2019.[5] Waitr began working with the Casa Plaintiffs over the course of one year, sometime between July 2015 and February 2016.[6] At commencement, Casa Plaintiffs paid a $1,099.00 startup fee.[7] In early July of 2019, Waitr sent a notice that stated "Waitr will be terminating the current partnership agreement between your restaurant and Waitr, effective July 31, 2019."[8] Both Casa Manana and Que Pasa's contracts stated that the "agreement[s] continue[d] until all orders have terminated."[9] Casa Tu's contract stated that

---

[4] [Doc. No. 48, p. 19-20].

[5] [Doc. No. 121-1, p. 6].

[6] [Doc. No. 121-2, p. 2].

[7] [Doc. No. 142-2, p. 3].

[8] [Doc. No. 121-1].

[9] [Doc. No. 121-2, p. 8].

"either party may terminate this agreement with 10 days written notice, subject to all open orders terminating."[10]

On July 17, 2019, Waitr Business Development Manager, Brad Ragusa, the primary point of contact between Casa Plaintiffs and Waitr, emailed Darren Martel ("Martel"), manager of the Casa Plaintiffs, regarding three new contract options instead of terminating the parties' relationship altogether. The offered options were: (1) a tiered transaction rate structure based on monthly restaurant revenues; (2) a flat 20% transaction fee; or (3) a combination of the two.[11] To the proposed options, Martel responded "Let's talk tomorrow. Thanks", and two days later, he elected option one for Casa Tu and differing options for Casa Manana and Que Pasa.[12]

Mark Killebrew ("Killebrew"), director of Waitr Operations, and Lauren Vaughn ("Vaughn"), Waitr's regional sales director, stated in their deposition that they were not given specific reasons why the rate increased.[13] However, Killebrew testified that the termination and renewal options were due to an urgent financial matter.[14] Killebrew testified as to the significantly lower take rates compared to other contenders in the business and was told of the unyielding low profits putting the business in serious financial risk.[15] Vaughn testified that the change was necessary to combat the low profits and stay competitive in the marketplace.[16] Further, Richard Queen ("Queen"), V.P. of Sales and Account Management for Waitr, testified that having the

---

[10] [Doc. No. 121-2, p. 16].

[11] [Doc. No. 121-1, p. 28].

[12] [Doc. No. 121-2, p. 29; 121-2, p. 33; 121-2, p. 36].

[13] [Doc. No. 121-3, p. 5; 187-2, p. 4; Doc. No. 187-3, p. 4].

[14] [Doc. No. 187-2, p. 4]

[15] [Id.]

[16] [Doc. No. 121-3, p. 7-8].

lowest industry standard is not always best for the business, due to the second-rate connotation, especially when dealing with consumables and perishables, like food.[17]

The issues have been briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

 "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.  *Id.*  "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

---

[17] [Doc. No. 121-5, p. 5].

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 711 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

## B.      Article 1770 Application to the Case at Hand

It is undisputed that Louisiana Civil Code Article 2024 ("Article 2024") applies to this case because the contracts at issue were of unspecified duration and while Article 2024 is straightforward and applicable to this case, other Civil Code Articles and applicable case law provide for additional guidance. At issue is whether Louisiana Civil Code Article 1770 ("Article 1770") applies and if so, whether Defendant exercised the termination in good faith. In its Motion,

Defendant contends that Article 1770 "simply does not apply to bilateral contracts between Waitr and the [Casa Plaintiffs] that had been in effect for several years before Waitr's July 1, 2019, notice of termination"[18] and Casa Plaintiffs refute this notion.

Casa Plaintiffs argue that Waitr terminated the contracts in bad faith and premise this claim on Article 1770. Defendant contends that because performance had been in effect for several years prior to the notice of termination, this article does not apply.

Article 1770 states in part that "a resolutory condition that depends solely on the will of the obligor must be fulfilled in good faith." La. Civ. Code Art. 1770. "[A] resolutory condition that depends solely on the obligor's will must be fulfilled in good faith but does not make the obligation null. Thus, a 'termination at will' clause is not necessarily null if the right to terminate is exercised in good faith." Comment (F), La. Civ. Code Article 1770. Further, a notice of termination of a contract must be in good faith. *Harp v. Autrey*, 121 So.3d 1260 (La. App. 2nd Cir. 8/21/13).

Casa Plaintiffs cite persuasive authority in *Volentine v. Raeford Farms of Louisiana, LLC*, 201 So. 325 (La. App. 2d. Cir. 8/15/16), in support of their argument that Article 1770 applies to bilateral contracts. In *Volentine*, the Louisiana Second Circuit Court of Appeal applied Article 1770 to a bilateral contract between a chicken breeder farmer and a chicken manufacturer. *Id.* at 341. The plaintiff entered two hatching egg production contracts with the defendant where the defendant essentially supplied all of Volentine's chickens. *Id.* at 332. In return, Volentine agreed to provide, at his cost, labor, utilities, housing, and equipment, among other things. *Id.* The court concluded the long-term duration of the contract required good faith despite the at-will termination nature of it. *Id.* at 342-43.

---

[18] [Doc. No. 121, p. 8].

Here, Defendant argues that Article 1770 does not apply because the contract had been consistently performed for several years prior to the notice of termination. The contract in *Volentine* had likewise began prior to the termination.  However, despite the duration and at-will termination of the contracts in *Volentine,* the court still concluded that the contract required good faith in terminating it.

In *Brennan's Inc. v. Colbert*, 191 So. 1101 (La. App. 4th Cir. 4/13/16), the plaintiff and defendant were engaged in an attorney-client relationship. The plaintiff sued the defendant because the defendant's legal representation deviated below the standard of care required. *Id.* at 1104. Although the subject of the contract in the *Brennans* case is not synonymous with the case at hand, both cases deal with a contract that is bilateral in nature. In *Brennans*, the court applied Article 1770. *Id.* at 1121. Although not binding on this Court, but helpful, the footnotes in the case state, "While [Article 1770] encompasses explicit termination-at-will clauses, we perceive little, if any, difference between a contract which contains such a clause and one of unspecified duration. In either case, the agreement may be terminated at will, which action is subject to an overriding duty of good faith." *Id.* at 1127. Here, regardless of whether the bilateral contract had been in effect for several years prior to the termination, it remained a bilateral contract which is subject to an overriding duty of good faith.

Thus, Defendant must prove that there is no genuine issue of a material fact regarding Defendant's good faith decision to terminate the contracts in order to succeed on its motion. The discussion regarding good faith will commence below.

## C.    Reasonable Notice and Good Faith

Louisiana Civil Code Article 1983 implies a covenant of good faith and fair dealing in

every contract, which, by nature, includes a good faith requirement in the termination of contracts. *Tripp v. Pickens*, No. CV 17-0542, 2019 WL 1966132 (W.D. La. May 1, 2019).  Thus, regardless of whether Article 1770 applies to the case at hand, there is an underlying covenant of good faith implied in every contract. In addition to the good faith requirement, Article 2024 indisputably applies in this case, thus it will be discussed first.

### 1.  Article 2024

First, the Court must decide whether Defendant complied with the requirements of Article 2024, which undoubtedly applies in this case. Article 2024 states "[a] contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party."  Comment (E) of Article 2024 states "In proceeding under this Article, the parties must comply with the overriding duty of good faith. Reasonable advance notice will usually be required to avoid unwarranted injury to the interest of the other party. See U.C.C. § 2-309(3).

The Court agrees with Defendant that it complied with Article 2024 in reasonably providing notice of termination. As long as the notice complies with the timing and form requirements in the agreement, then the notice is reasonable. *Atlantic Banana Co v. Standard Fruit & S.S. Co.,* 439 F.2d 555, 560 (5th Cir. 1974) (where six months' notice was reasonable because it was given within the time frame as required under the contract). Here, the Defendant went beyond the required notice in this case.  Of the three contracts at issue, two did not require any notice period before termination and one only required 10 days' notice. The Defendant sent notice on July 1, 2019, that the contracts would terminate on July 30, 2019. Notably, the 30 days' notice was more than sufficient.

Thus, Waitr complied with all requirements as set out in this article, and there is no genuine issue of material fact on this portion of the Motion.

### 2. Good Faith

Secondly, because there is an implied covenant of good faith in every contract under Article 1983, the Court must decipher whether the Defendant terminated the contract in good faith. Casa Plaintiffs argue that Waitr has not met its burden in proving legitimate reasons for termination of the contracts. On the contrary, Defendant argues that it has a legitimate business reason for termination and thus, ending the terms of the contract was not only warranted, but necessary, to aid higher profits.

"Bad faith" means more than mere bad judgment or negligence and it implies the conscious doing of a wrong for dishonest or morally questionable motives. *Sartisky v. Louisiana Endowment for the Humanities*, No. 14-1125, 2014 WL 5040817, at 2* (E.D. La. Sept. 26, 2014) (quoting *MKR Servs., L.L.C. v. Dean Hart Constr., L.L.C*, 16 So. 3d, 562, 566 (La. App. 2d Cir. 7/8/09). If termination occurs because of a purely personal rather than business reasons, bad faith may exist. *Bains v. Young Men's Christian Ass'n of Greater New Orleans*, 969 So.2d 646, 651 (La. App. 4th Cir. 2007). The termination must not be done to cause harm to the other party or for any reason other than a legitimate business decision. *Mixon v. Iberia Surgical LLC*, 965 So. 2d 76, 81 (La. App. 3rd. Cir 4/18/07). As such, a legitimate business decision negates a bad faith assertion. *Id.*

Although Killebrew stated that he was not involved with the direct decision to increase a rate change, Killebrew did assert in his deposition that the financial problem was brought to his attention. Killebrew stated that he understood the situation to be that Waitr was "not going to be able to make it through, potentially, this quarter unless we execute on this initiative."[19] After being

---

[19] [Doc. No. 121-4, p. 9].

informed of this "urgent matter," Killebrew stated he began "investigating different vendors, different software, and trying to come up with a solution[.]"[20]

There is sufficient evidence that this decision was not personal but rather a business decision to stay afloat and remain competitive in the marketplace.  Queen testified that Waitr realized that the lowest percent in the industry was not always the best, especially in dealing with perishables, like food. As stated above, Waitr was well below the industry standard at ten percent (10%). Necessarily then, a legitimate business strategy would be to increase the percentage in order to enter the bracket with other competitive providers like UberEats and DoorDash. Just because the witnesses did not personally attend the financial meeting does not mean they are not aware of the contents of that meeting, as it is highly unlikely every person employed by a business is physically present at an internal business affair.

In *Brennan's Inc.*, the court stated that the contract between the attorney and his client was "of unspecified duration." 191 So.3 at 1121. *See also*, La Civ. Code Art. 2024. The court went on to explain the two articles that are at issue in this case:

> Accordingly, it can be 'terminated at the will of either party by giving notice, reasonable in time and form, to the other party.' When acting pursuant to this Article, however, 'the parties must comply with the overriding duty of good faith,' and provide '[r]easonable advance notice' in order to 'avoid unwarranted injury to the interests of the other.' Comment (e) to La. Civil Code art. 2024; see also La. Civil Code art. 1759 ("Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation."). "In order to comply with the requirement of good faith, a party exercising his right to terminate a contract at will should consider not only his own advantage, but also the hardship to which the other party will be subjected because of the termination." Comment (f) to La. Civil Code art. 1770.

*Id.*

---

[20] [Doc. No. 187-2, p. 4].

As Defendant correctly asserts, Waitr did not cause substantial hardship to Casa Plaintiffs with no justification. Waitr is not a necessary platform for the Casa Plaintiffs. It is an additional service. Casa Plaintiffs did not rely on Waitr for their business. While termination and an increased rate are certainly a disadvantage and inconvenience to Casa Plaintiffs, this issue is not outweighed by the normal expectation of Waitr to make a legitimate business decision in order to stay operative. In addition to the financial reasons stated above, Vaughn testified that she explained to the owners who had concerns over the increase that Waitr essentially had no other choice because of the low profitability and that the decision was necessary. Further, Killebrew stated that the take rate under the 2019 contracts was still below the industry standard of 30%-35%. Necessarily, then, it was not a rate increase so out of the ordinary as to signal bad faith because it was still lower than the industry standard.

Casa Plaintiffs argue that Waitr "was trying to 'gain an advantageous position' and 'force' action from the Casa Plaintiffs" thus, imposing hardship upon Casa Plaintiffs.[21] However, this is simply not the case. Waitr did not "force" Casa Plaintiffs to sign a new contract with the higher rate. Instead, Waitr gave Casa Plaintiffs three new options, to which they could have opted out, but voluntarily decided to continue using. Although a higher rate is inconvenient, in this case, it is still below the industry standard and would not cause substantial hardship or detriment to the Casa Plaintiffs. Casa Plaintiffs further argue that they were harmed in forfeiting a $1,099.00 start-up cost. Again, Casa Plaintiffs used Waitr's service voluntarily for over three years after paying this fee. Further, there is no evidence that there was a request for this fee to be refunded.

---

[21] [Doc. No. 187, p. 13].

Considering the evidence put forth by Defendant as to its good faith termination of the contracts at issue, there is no genuine issue of material fact regarding the breach of the duty of good faith.

      **D.**    **Unjust Enrichment**

In Count V of the Amended Complaint, Casa Plaintiffs claim unjust enrichment.  Waitr is entitled to summary judgment on Count V because as this Court has previously held, the availability of another remedy at law (the existence of contracts) bars the claim. One of the required elements of a claim for unjust enrichment is that the plaintiff does not have any other remedy at law. It is of no moment that plaintiff may not prevail in pursuit of other remedies at law.  *Zaveri v. Condor Petroleum Corp.*, 27 F. Supp 3d 695, 699 (W.D. La. 2014); and *Walters v. MedSouth Record Management, LLC*, 38 So. 3d 241, 242 (La. 2010) (*per curiam).*

**III.**    **CONCLUSION**

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Waitr's Motion for Partial Summary Judgment [Doc. No. 121] is **GRANTED**, and the claims made by Casa Plaintiffs in the Amended Complaint under Count IV and Count V are **DISMISSED WITH PREJUDICE.**

MONROE, LOUISIANA this 31st day of January 2024.

                                           _____
                                               **TERRRY A. DOUGHTY**
                                     **UNITED STATES DISTRICT JUDGE**